## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TONIA MARIE SKINNER AND GREGORY W. CAUSEY** | * **CIVIL ACTION NO: 3:19-cv-00066-JWD-EWD** |
| | * |
| **VERSUS** | * **JUDGE: JOHN W. DEGRAVELLES** |
| | * |
| **JASON ARD, SHERIFF OF LIVINGSTON PARISH, ET AL.** | * **MAGISTRATE JUDGE: ERWIN WILDER-DOOMES** |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

**MAY IT PLEASE THE COURT:**

Defendant, Deputy Barney McLin, respectfully submits this Memorandum in Support of his Motion to Dismiss. For the reasons more fully set forth below, it is submitted that all federal law claims asserted against Deputy McLin, as well as all claims of liability under Louisiana state law, should be dismissed.

### INTRODUCTION AND BACKGROUND

On February 1, 2018, plaintiffs filed their Complaint in this Honorable Court asserting claims under 42 U.S.C. § 1983 and Louisiana state law.[1] Therein, plaintiffs allege that, on February 1, 2018, Deputy McLin arrived at the residence of the plaintiffs to serve Ms. Skinner with a jury summons.[2] The Complaint alleges that, upon seeing Deputy McLin arrive at the home, Ms. Skinner went outside to inform him that her dog was outside roaming in the yard and ask Deputy McLin to wait by his unit while she apprehended the dog.[3] The Complaint further alleges that, as Deputy McLin proceeded towards Ms. Skinner, the dog entered the front yard and

---

[1] R. Doc. 1.
[2] *Id.* at ¶ 12.
[3] *Id.* at ¶ 13.

ran towards Ms. Skinner and Deputy McLin.[4] Plaintiffs allege that the dog ran behind Deputy

McLin and "nipped at his lower right calf area" before running toward Ms. Skinner.[5]

The Complaint alleges that, as the dog was retreating from Deputy McLin, he drew his

weapon and shot the dog twice in the side.[6] It is alleged that Deputy McLin attempted to shoot

the dog again, but missed; thus, he took a few steps forward toward the dog and shot it in the

head, killing the dog.[7] The Complaint alleges that Mr. Causey arrived at the home shortly

thereafter and observed the deceased dog and his wife.[8] Plaintiffs allege that there was no

justifiable cause for Deputy McLin to shoot the dog, and should have employed non-lethal

methods to restrain the dog or allowed Ms. Skinner to apprehend the dog.[9] Based on the

foregoing, plaintiffs allege various claims against Deputy McLin under both Louisiana law and

42 U.S.C. § 1983, including illegal seizure; conversion; negligent hiring, training, and

supervision.

With respect to Deputy McLin, plaintiffs allege that Deputy McLin did not have

"justifiable cause" to discharge his firearm or use deadly force on the dog, and allege a myriad of

other actions that they claim Deputy McLin could have taken. Specifically, plaintiffs claim that

Deputy McLin could have and should have employed non-lethal force to restrain the dog or gone

back to his vehicle and waited while Ms. Skinner attempted to retrieve her dog.[10] Plaintiffs allege

that their property was damaged by Deputy McLin's actions, and that he acted unreasonably

---

[4] *Id.* at ¶ 14.
[5] *Id.* at ¶ 15.
[6] *Id.* at ¶ 16.
[7] *Id.* at ¶ 18.
[8] *Id.* at ¶ 19.
[9] *Id.* at ¶¶ 20-21.
[10] *Id.*

1688085.1

under the circumstances by using lethal force.[11] Based on the actions of Deputy McLin, plaintiffs

aver that their rights under the Fourth and Fourteenth Amendments were violated.[12]

Plaintiffs have failed to state a cause of action against Deputy McLin, as plaintiffs'

allegations are insufficient to establish the requisite elements of his claims, or that Deputy McLin

is not entitled to qualified immunity. Plaintiffs are required to plead sufficient facts to raise their

claims for relief beyond a speculative level, but their conclusory allegations that Deputy McLin

was required to use non-deadly force and that his actions violated their constitutional rights are

insufficient to meet this burden. Pursuant to Rule 12(b)(6), plaintiffs' claims should be

dismissed.

## LAW AND ARGUMENT

According to Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion to

dismiss tests the legal sufficiency of the claims stated in the Complaint, whereby the court must

decide whether the facts alleged, if true, would entitle the plaintiff to some form of legal

remedy.[13] A district court may dismiss a complaint, or any part of it, for failure to state a claim

upon which relief can be granted if the plaintiff has not set forth factual allegations in support of

his claim that would entitle him to relief.[14]

As the Fifth Circuit explained in *Gonzalez v. Kay:*

> Factual allegations must be enough to raise a right to relief above
> the speculative level. The Supreme Court recently expounded upon
> the *Twombly* standard, explaining that "[t]o survive a motion to
> dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to 'state a claim to relief that is plausible on its
> face.'" A claim has facial plausibility when the plaintiff pleads

---

[11] *Id.* at ¶¶ 23, 31.

[12] *Id.* at ¶ 37.

[13] *Ramming v. U.S*, 281 F.3d 158, 161 (5th Cir. 2001).

[14] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

1688085.1

> factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. It follows that "**where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.**'"[15]

This plausibility standard is not akin to a "probability requirement," but it asks for more than a mere possibility that a defendant has acted unlawfully.[16] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[17] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[18] Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[19]

Here, plaintiffs have not come close to the standards enumerated in *Iqbal* and *Twombly* and have failed to provide sufficient factual support in their Complaint to maintain a claim against Deputy McLin. All statements made in the Complaint regarding Deputy McLin are, at best, conclusory allegations that are nowhere near sufficient to state a claim against him. Deputy McLin's motion to dismiss should be granted.

## A. **Plaintiffs have not stated an independent cause of action against Deputy McLin under federal law.**

Deputy McLin is entitled to and hereby pleads qualified immunity. The United States Court of Appeals for the Fifth Circuit has held that there is a heightened pleading standard where a defendant in a lawsuit brought pursuant to § 1983 has pled qualified immunity.[20] "The plaintiff

---

[15] 577 F.3d 600, 603 (5th Cir. 2009) (emphasis added).
[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Morin v. Claire*, 77 F.3d 116, 121 (5th Cir. 1996); *Shultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995).

1688085.1

must support his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of a defendant's conduct."[21]

A defense of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law.[22] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"[23] and is immunity from suit rather than a mere defense to liability.[24] "The immunity inquiry is intended to reflect the understanding that reasonable mistakes can be made as to the legal constraints on particular police conduct."[25]

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[26] "To discharge this burden [upon a motion to dismiss,] a plaintiff must satisfy a two prong test."[27] "First, he must claim that the defendants committed a constitutional violation under current law."[28] "Second, he must claim that the defendants were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."[29] In the qualified immunity context, the objective reasonableness of an officer's conduct is a question of law and not one of fact.[30] As to the second

---

[21] *Shultea*, 47 F.3d at 1434.
[22] *Atteberry v. Nocona Gen'l Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).
[23] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[24] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted).
[25] *Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009) (citations omitted).
[26] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citations omitted).
[27] *Atteberry* , 430 F.3d at 253.
[28] *Id*.
[29] *Id*.
[30] *Attenberry*, 430 F.3d at 256, citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

1688085.1

prong, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'" on a motion to dismiss.[31]

Here, plaintiffs must plead sufficient **facts** to demonstrate that Deputy McLin committed a constitutional violation under current law, and, even if plaintiffs do so, they still must show that Deputy McLin's actions were objectively unreasonable in light of the current law that was clearly established at the time of the actions set forth in the Complaint.[32] However, plaintiffs have provided no specific facts demonstrating that Deputy McLin is not entitled to qualified immunity.

In their Complaint, plaintiffs plead the bare allegations that Deputy McLin arrived at the home of the plaintiffs to serve a jury summons. When Deputy McLin exited his vehicle, plaintiffs allege that Ms. Skinner informed him that her dog was running at large on the property and that she would put him back inside the house. Before she could restrain her dog, plaintiffs allege that it "nipped" Deputy McLin on his right calf, prompting him to shoot and kill the dog. Plaintiffs make the conclusory allegation that Deputy McLin had no justifiable cause to shoot the dog and should have employed non-lethal force to control the dog. Plaintiffs allege that Deputy McLin's decision to use lethal force on the dog rather than non-lethal measures, resulted in a violation of their rights under the Fourth and Fourteenth Amendments.

The killing of a dog may be a destruction recognized as a seizure under the Fourth Amendment.[33] Reasonableness is the touchstone of any seizure under the Fourth Amendment.[34] To comply with the Fourth Amendment, the shooting of the dog must therefore have been

---

[31] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

[32] *Atteberry* , 430 F.3d at 253.

[33] *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005).

[34] *Id.* at 975.

1688085.1

reasonable under the totality of the circumstances.[35] Seizures become unreasonable when they are more intrusive than necessary.[36] Thus, in examining the reasonableness of a seizure, the court must balance the nature and quality of the intrusion on the individual's Fourth Amendment rights against the countervailing governmental interests at stake.[37] Accordingly, courts look to the totality of the circumstances to determine whether the destruction of property was reasonably necessary to effectuate the performance of the law enforcement officer's duties.[38]

In determining whether the killing of a dog to protect officer safety was reasonable, courts have taken into account numerous factors in assessing the totality of the circumstances facing the officer. This may include the demeanor of the dog at the time of the incident, such as whether it appeared aggressive by barking and snarling.[39] Courts have also considered any evidence of the dog's past tendencies for displaying aggressive behavior.[40] In addition, whether the officers had knowledge of a dog's presence or were surprised by dog's approach factors into the reasonableness of the shooting.[41] Courts may also consider whether officers took less drastic alternative measures prior to killing the dog, but it has been recognized that an officer need not use the least harmful alternative in dealing with a dangerous situation when the officer's safety is an issue.[42] The breed of the dog, its size, and its characteristics for aggressive behavior may also factor into the reasonableness inquiry.[43] Ultimately, "[t]he calculus of reasonableness must

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gregory*, 63 F. Supp. 3d at 1178.

[40] *Id.* at 1178-79.

[41] *Hells Angels*, 402 F.3d at 977 (reasoning that the officers were aware of the presence of dogs in the home for a week before they arrived at the home).

[42] *McCarthy v. Kootenai County*, No. CV 08-294-N-EJL, 2009 WL 3823106, at *6 (D. Idaho Nov. 12, 2009) ("An officer need not use the least harmful alternative in dealing with a dangerous situation in which officer safety is an issue. Requiring the least intrusive alternative is not a realistic approach where law enforcement officers have to make split second decisions regarding their safety.").

[43] *See Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 572 (6th Cir. 2016) (emphasizing the dog's breed and taking into account "the nature and size of the dogs").

embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." [44] "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry . . .  is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." [45]

Here, the plaintiffs do not plead nearly sufficient facts to demonstrate that Deputy McLin's actions were excessive or unreasonable under the circumstances. In sum, plaintiffs plead that their dog was running free on the property and was not contained in any way. It should be noted that this is a violation of La. R.S. § 3:2771.[46] Plaintiffs also plead that their dog ran at Deputy McLin, approached him from behind, and bit or attempted to bite Deputy McLin's right leg. Though plaintiffs plead that the dog was running away from Deputy McLin when it was shot, there are no allegations that the dog was contained or under control at the time of the shooting. Plaintiffs provide no facts that would establish the unreasonableness of the deputy's conduct, particularly in light of the factors and considerations set forth above. That is, no facts are plead that, if true, would show that Deputy McLin's conduct was both objectively unreasonable under the circumstances, and that every reasonable officer would have known so.

Instead, plaintiffs assert the conclusory allegation that Deputy McLin acted unreasonably in shooting the dog and that Deputy McLin should have used less harmful alternative, yet they provide no factual support for this conclusion. These allegations are conclusory and are

---

[44] *Id.*

[45] *Id.*

[46] That section provides that "No person shall suffer or permit any dog in his possession, or kept by him about his premises, to run at large on any unenclosed land, or trespass upon any enclosed or unenclosed lands of another."

1688085.1

insufficient to state a claim against Deputy McLin. Nor are they entitled to a presumption of truth on a motion to dismiss.[47]

Indeed, a claim that an officer was unreasonable in shooting a dog that had bit or was attempting to bite him is the very type of legal conclusion that the Supreme Court has found insufficient to state a claim and that is not entitled to be presumed true on a motion to dismiss. Further, plaintiffs simply conclude that Deputy McLin should have used a less harmful alternative in restraining the dog. This is a conclusion of law that attempts to view Deputy McLin's actions with the benefit of 20/20 vision of hindsight. As discussed above, simply using the word unreasonable and concluding that different actions should have been taken does nothing more than recite the elements of a cause of action. The law is clear that this is not sufficient.

Rather, plaintiffs must provide facts that would demonstrate why shooting the dog was unreasonable under the totality of the circumstances. However, no details are provided in the Complaint. Indeed, there is no indication that Ms. Skinner was able to apprehend the dog or that the dog would not have approached and bit Deputy McLin once more. As the dog was still running at large in the yard and near Deputy McLin, the shooting of the dog as alleged in the Complaint may have been necessary, appropriate, and reasonable. Louisiana law specifically permits the killing of any dangerous or vicious dog.[48]

Finally, plaintiffs have not provided any facts as to why Deputy McLin is not entitled to qualified immunity. There are no facts pled to show that every reasonable officer would have known that Deputy McLin's conduct violated the law. No facts are plead which would show that shooting a dog that displayed its aggression and is not restrained was so unreasonable that every officer would have known that it violated the plaintiffs' constitutional rights. Without facts

---

[47] *Iqbal*, 556 U.S. at 678.
[48] La. R.S. 3:2773(D).

detailing this information, the Court cannot draw the conclusion that Deputy McLin is not entitled to qualified immunity.

It is plaintiffs' burden to plead facts demonstrating that the shooting, or Fourth Amendment seizure, of the dog was clearly unreasonable and that every reasonable officer would know that the shooting of the dog violated plaintiffs' constitutional rights. To do so, plaintiff must plead facts and point to existing precedent which establishes "beyond debate" that Deputy McLin's conduct was unconstitutional.[49] However, with the facts presented in the plaintiffs' Complaint, it cannot be said, "beyond debate" that Deputy McLin's conduct violated the law, particularly when existing precedent is considered.

In *Stephenson v. McClelland*, 632 Fed.Appx. 177 (2015), a Houston police officer responded to an anonymous tip in a 911 call reporting the presence of a man brandishing a gun on a residential street in southwest Houston. After arriving on the scene, as the officer approached the suspect, he was surprised by a large dog, which was later identified as a 50–pound, three-year-old boxer. Though a question of fact existing regarding whether the dog jumped at the officer or not, it was undisputed that the dog was in the front yard without a leash and appeared suddenly as the officer reached the suspect. The officer fired one shot at the dog, which died later that day.

The dog's owners filed suit against the officer for, among other things, a violation of their fourth amendment rights for killing their dog. The officer filed a motion for summary judgment, seeking dismissal of that claim, which was granted by the district court. Affirming that judgment, the Fifth Circuit noted that the parties disagreed as to whether the dog jumped on the deputy ans showed his teeth or was simply "smiling" was the plaintiff testified. Nevertheless, even viewing the facts most favorable to the plaintiff, the Court found there was insufficient evidence to

---

[49] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

demonstrate that a constitutional right was clearly established such that a reasonable officer in

Officer Duncan's situation would have understood that his conduct violated that right.

Specifically, the Court held as follows:

> Officer Duncan did not know there would be a dog present during his encounter
> with Karlton and was surprised by its presence. While Karlton knew his family
> pet to be friendly and nonaggressive, Officer Duncan did not. Officer Duncan was
> startled by a large dog that was showing its teeth (whether baring them
> aggressively or "smiling"). Officer Duncan was forced to make a split-second
> judgment in a tense situation and he acted to protect himself. Accordingly, we
> conclude that Officer Duncan is entitled to qualified immunity on these claims.

The same is true here. According to the Complaint, plaintiff's dog not only threatened to bite

Deputy McLin, it actually nipped/bit him at his lower right calf. If the law was not so clearly

established in *Stephenson* that the officer's conduct there was objectively unreasonable, surely

that is not the case here, either.

Based on the facts pled, plaintiffs simply have not demonstrated that a constitutional

violation occurred, nor have they shown that the law is so well-settled that every reasonable

officer would have known, "beyond debate", that the conduct was unlawful. Accordingly,

plaintiffs' claims must be dismissed.

### B. <u>Plaintiffs have not stated a claim against Deputy McLin under Louisiana state law.</u>

Plaintiffs also assert a state law claim for conversion against Deputy McLin arising out of

the killing of their dog. However, for the same reasons discussed above, plaintiff has not alleged

sufficient facts to demonstrate that Deputy McLin is liable for the state law tort of conversion.

Pursuant to La. R.S. 3:2773(D):

> Any citizen or officer may kill any dangerous or vicious dog, and no citizen or
> officer shall be liable to damages or to prosecution by reason of killing any
> dangerous or vicious dog.

11

1688085.1

Louisiana courts have held that La. R.S. 3:2773 provides citizens and officers with the authority to kill vicious dogs in certain situations, such as when a dog is attacking someone or someone's property.[50] It is the recognition of the right of self-defense, defense of others, or defense of property.[51] The test is whether a reasonable person under similar circumstances would have concluded that the dog was dangerous under the statute.[52] What must be shown to be granted immunity under the circumstances is that the defendant, when confronted with the alleged events, acted in what he thought to be the most expedient and prudent manner in protecting himself from immediate danger.[53] That danger need not exist, as it is only necessary that the actor have grounds which would lead an ordinary, reasonable man to believe it exists, and that he believes so.

As discussed above, plaintiffs have plead that their dog was unrestrained, came at the deputy, and was allowed to bite/nip Deputy McLin's lower calf. Under these facts, La. R.S. 3:2773 provides immunity to Deputy McLin against any claims that would arise under state law for his use of force in responding to that threat. Accordingly, all of plaintiffs' state law claims should be dismissed.

### C. **Plaintiffs are not entitled to recovery of "*Lejune*" Damages.**

Plaintiffs also seek to recover "*Lejune*" damages arising out of the death of their dog.[54] Plaintiffs allege that Ms. Skinner witnessed the death of the dog, and Mr. Causey "arrived upon the scene shortly thereafter and observed Roscoe, dead on the ground, and his grief-stricken

---

[50] *Hebert v. Broussard*, 2004-485 (La. App. 3 Cir. 11/10/04), 886 So.2d 666, *citing DuBois v. McGuire*, 579 So.2d 1025, 1034 (La. App. 4 Cir. 1991).
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] R. Doc. 1, ¶ 33.

1688085.1

wife."[55] However, plaintiffs have no legal cause for recovery of *Lejune* damages arising out of

plaintiffs' witnessing of the shooting of the dog or observing the deceased dog after the shooting.

The matter of *Lejeune v. Rayne Branch Hosp.*, 556 So. 2d 559, 570 (La. 1990) held that

mental pain and anguish claims arising out of injury to a third party are allowable, with the

following modifications and parameters:

1. A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another. Nor need he be in the zone of danger to which the directly injured party is exposed. He must, however, either view the accident or injury causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition.

2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the Plaintiff's position would suffer serious mental anguish from the experience.

3. The **emotional distress sustained must be both serious and reasonably foreseeable to allow recovery**. Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both **severe and debilitating.** For instance, *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983) held that "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." A nonexhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock. *Paugh*, *supra*; *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980).

4. A fourth restriction concerns the relationship of the claimant and the direct victim.

The holding of the *Lejune* court was codified in La. Civ. Code art. 2315.6. This article clearly

defines the relationship between the injured person and the persons who view an event or come

upon the scene shortly after. La. Civ. Code art. 2315.6 reads as follows:

---

[55] *Id.* at ¶ 19.

A. The following persons who view an event **causing injury to another person**, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:

(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.

(2) The father and mother of the injured person, or either of them.

(3) The brothers and sisters of the injured person or any of them.

(4) The grandfather and grandmother of the injured person, or either of them.

B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's **mental anguish or emotional distress must be severe, debilitating, and foreseeable.** Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

The plaintiffs do not have a cause of action for *Lejune* damages because the parameters set by the *Lejune* court and La. Civ. Code art. 2315.6 are not met herein. Initially, it is observed that the "direct victim" of the incident is the plaintiffs' dog, not a person. Though the plaintiffs allege that they either witnessed the accident or came upon the scene shortly after the incident, Article 2315.6 allows recovery only for those witnesses an event causing injury to certain enumerated **persons**. Under Louisiana law, dogs are not classified as persons, but are considered personal property.[56] This is even more evident considering the class of persons who may recover damages that they suffer from witnessing another's injury. The relationships are those between members of a family, such as father and mother of a child, and do not include the owners of a pet. Clearly, plaintiffs are not entitled to *Lejune* damages for witnessing the death of a dog.

---

[56] La. R.S. 3:2773.

14

Moreover, plaintiffs do not allege that they suffered severe and debilitating emotional distress. Plaintiffs Complaint is devoid of allegations of serious emotional distress beyond simple mental pain and anguish. Without severe emotional distress, plaintiffs are not entitled to the recovery of an award of mental anguish and pain arising from the observation of the death of their dog. Accordingly, plaintiffs have failed to state a cause of action for recovery of *Lejune* damages.

### D. Plaintiffs have not stated a cause of action for recovery of veterinarian expenses.

In their Complaint, plaintiffs assert their entitlement to "past, present, and future medical/veterinary expenses.[57] However, plaintiffs have not stated a cause of action for recovery of medical or veterinary expenses. Plaintiffs have not pled that any medical or veterinary expenses were incurred arising out of the incident at issue herein. Rather, plaintiffs allege that Deputy McLin killed their dog at the home; thus, any veterinarian or medical expenses would be unnecessary. As plaintiffs have not alleged that any medical or veterinary expenses were expended in connection with the incident at issue, plaintiffs have failed to state a cause of action for recovery of such damages.

### E. Plaintiffs are not entitled to recovery for loss sense of security and trust for law enforcement.

Plaintiffs also seek an award of damages for loss sense of security and trust for law enforcement arising from the alleged illegal seizure of their dog. However, plaintiffs are not entitled to a separate damage award for recovery for any alleged loss sense of security and trust for law enforcement. Such damages are not recoverable and are highly speculative. Though such an award may be included under a possible mental anguish award, it is not a separate element of

---

[57] R. Doc. 1, ¶ 33.

damages. Accordingly, plaintiffs have failed to state a cause of action for recovery of any loss sense of security and trust for law enforcement.[58]

### F. **Plaintiffs are not entitled to an award for mental anguish or emotional distress for the destruction of property under Louisiana law.**

Louisiana has jurisprudentially limited recovery of emotional distress damages by requiring the emotional distress be severe and not merely the result of the usual worry or anxiety attendant to property damage.[59] Every incident of property loss is accompanied by some degree of worry or consternation; however, recovery of damages requires the plaintiff to have suffered psychic trauma in the nature of or similar to a physical injury as a direct result of the incident which caused the property damage.[60] Damages are generally awarded when the property is lost or damaged by: (1) an intentional or illegal act; (2) an act for which the tortfeasor will be strictly or absolutely liable; (3) acts constituting nuisance; or (4) acts occurring when the owner is present or at the time, or shortly after, damage was negligently inflicted and owner suffers psychic trauma as a result.[61]

This issue was discussed in *Bourgeois v. Allstate Ins. Co.*, 02-105 (La. App. 5 Cir. 5/29/02), 820 So.2d 1132. In *Bourgeois*, plaintiff brought suit against a nail salon for negligence in failing to take due care that the plaintiff's engagement ring would not be lost. On one visit to the nail salon, plaintiff removed her engagement ring in the course of receiving a manicure and placed it in her purse. After plaintiff left the salon, plaintiff realized her engagement ring was missing. It was determined than an employee of the salon had stolen the ring from the plaintiff's

---

[58] *See Dancy v. McGinley*, 2015 WL 13214324 (S.D.N.Y. May 11, 2015).

[59] *Bayer v. Starr Int'l Corp.*, 2017-948 (La. App. 4 Cir. 5/2/18), 246 So.3d 46.

[60] *Id.*; *Bourgeois v. Allstate Ins. Co.*, 02-105 (La. App. 5 Cir. 5/29/02), 820 So.2d 1132, 1137.

[61] *Bayer v. Starr Int'l Corp.*, 2017-948 (La. App. 4 Cir. 5/2/18), 246 So.3d 46, *citing Williams v. City of Baton Rouge*, 98-1981 (La. 4/13/99), 731 So.2d 240, n.5.

1688085.1

purse. The trial court awarded plaintiff damages for the mental anguish and emotional distress associated with the loss of her engagement ring.

On appeal, the Fifth Circuit reversed the award for mental distress. Though plaintiff testified that the ring had sentimental value because it was given to her by her husband before they were married and reset to commemorate their twenty-fifth wedding anniversary, and that she was now unable to go to any nail salon, there was no evidence that the plaintiff suffered extreme damages akin to physical injury from mental anguish as a result of the loss. The court noted that some degree of worry or consternation may have occurred and it did not discount the reality of plaintiff's suffering; however, it was ultimately decided that there was no evidence of real psychic trauma.

Similarly, plaintiffs herein have not alleged that they suffered any real psychic trauma as a result of the destruction of their property. Though a dog may be considered an item of sentimental or intrinsic value, there are no allegations that plaintiffs suffers from levels of extreme damages akin to physical injury that is required to recover damages for mental anguish in a case of lost property. Though plaintiffs allege simply that they have suffered emotional injuries and damages due to the loss of their pet and its companionship, these allegations do not show plaintiffs suffered such physic trauma as to rise to the level of a cognizable claim.[62] As such, plaintiffs have failed to state a cause of action for emotional damages resulting from the alleged loss of her property, and her claims should be dismissed.

---

[62] *See, e.g.*, *Kemper v. Don Coleman, Jr., Builder, Inc.*, 31-576 (La. App. 2 Cir. 7/29/99), 746 So.2d 11 (holding that, although plaintiffs suffered distress, worry, sadness, and "emotional upheaval" after witnessing the damage and destruction to their home resulting from flood, in addition to worrying about future flooding, this did not amount to physic trauma required to recover damages for emotional distress).

1688085.1

**CONCLUSION**

Plaintiffs' Complaint fails to state a cause of action against Deputy McLin. Plaintiffs have failed to allege facts that the actions taken by Deputy McLin were unreasonable and in violation of their constitutional rights. Further, plaintiffs have failed to plead that they are able to overcome Deputy McLin's invocation of qualified immunity.

Additionally, plaintiffs have failed to provide any factual support for their state law claims. Plaintiffs are unable to show that Deputy McLin acted unreasonably, or that they can overcome the immunity provided in La. R.S. 3:2773.

Plaintiffs are not entitled to recover *Lejune* damage for witnesses the incident that resulted in the death of their dog. La. Code Civ. P. 2315.6 provides for recovery of mental anguish or emotional distress damages when a certain class of individual witnesses the event causing injury to another person. Dogs are classified as personal property in Louisiana, and *Lejune* damages are not available for damages to property.

Likewise, plaintiffs are not entitled to recover damages for veterinarian or medical expenses, as they have not pled that any veterinarian or medical expenses were incurred. Damages for loss of security and trust in the police are not available to the plaintiffs, as this is highly speculative and not separate element of damages apart from mental anguish or emotional distress. For all of the reasons set forth herein, defendant respectfully request that this motion be granted.

Finally, plaintiffs cannot recover damages for emotional distress or mental anguish arising from the destruction of their property under Louisiana state law, as plaintiffs do not allege that they suffered any psychic trauma akin to physical injury. Because plaintiffs have not alleged,

1688085.1

and cannot prove, any severe emotional distress rising to the level of physical injury, plaintiffs

have failed to state a cause of action for the recovery of emotional damages.

       **WHEREFORE**, Defendant, Deputy Barney McLin, prays that the Court grant his

Motion to Dismiss, and order that all claims asserted against him be dismissed.

RESPECTFULLY SUBMITTED,

**BREAZEALE, SACHSE & WILSON, L.L.P.**
One American Place, 23rd Floor
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225/387-4000
Facsimile:  225/381-8029

*/s/ Druit G. Gremillion, Jr.*

**Cullen J. Dupuy, T.A. (La. Bar Roll No. 22345)**
**Druit G. Gremillion, Jr. (La. Bar Roll No. 33867)**
**Katherine M. Cook (La. Bar Roll No. 37640)**

*Counsel for Deputy Barney McLin*

1688085.1