UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISISANA

TONIA M. SKINNER AND
GREGORY W. CAUSEY

CIVIL ACTION

VERSUS

NO. 19-66-JWD-EWD

JASON ARD, AS SHERIFF OF
THE PARISH OF LIVINGSTON,
THE LIVINGSTON PARISH SHERIFF'S OFFICE
AND DEPUTY BARNEY MCLIN

## RULING AND ORDER

This matter is before the Court on a *Motion to Dismiss Pursuant to Rule 12(b)(6)* filed by Deputy Barney McLin ("Deputy McLin" or "Deputy") (the "*Motion*"). (Doc. 6.) In response, Tonia M. Skinner ("Ms. Skinner") and Gregory W. Causey ("Mr. Causey") (together the "Plaintiffs") filed their opposition to the *Motion*. (Doc. 10.) Deputy McLin filed a reply. (Doc. 15.) Oral argument is not necessary. Having considered the allegations in the complaint, the arguments, the law, and for reasons expressed below, the *Motion* is granted in part and denied in part as set forth below.

## FACTS

For the purpose of ruling on the *Motion* the Court accepts the following facts alleged in the *Complaint* as true.

Deputy McLin is a civil processing officer who works at the Livingston Parish Sheriff's Office. (Doc. 1 at ¶ 11.) Deputy McLin's responsibility was service of civil summons in Livingston Parish. (*Id.*) Sheriff Ard is the Sheriff of Livingston Parish. (Doc. 1 at ¶ 5.)

On February 1, 2018, Deputy McLin arrived at Plaintiff's house to serve Ms. Skinner with a jury summons. (Doc. 1 at ¶ 12.) When Deputy McLin arrived, Ms. Skinner informed the Deputy that her dog Roscoe had been let out and asked him to wait by his unit until Roscoe was

1

back in the house. (Doc. 1 at ¶ 13.) Roscoe was a six-year-old Weimaraner dog who had lived with and was cared for by the Plaintiffs for six years. (Doc. 1 at ¶ 25.) Roscoe was confined to Plaintiffs' home and/or back yard and rarely left. (Doc. 1 at ¶ 27.) Deputy McLin proceeded towards Ms. Skinner on her property. (Doc. 1 at ¶ 14.) Because Deputy McLin was warned that Roscoe was out, he was not surprised by Roscoe. (Doc. 1 at ¶ 29.) Roscoe ran from the back of the house and towards Ms. Skinner and Deputy McLin. (Doc. 1 at ¶ 14.) Roscoe ran to the back of Deputy McLin and nipped at his lower right rear calf area. (Doc. 1 at ¶ 15.) Roscoe then ran back toward Ms. Skinner who reached toward Roscoe to bring him inside. (*Id.*)

As Roscoe was running back towards Ms. Skinner, Deputy McLin pulled his personally owned weapon and shot Roscoe twice in the side. (Doc. 1 at ¶ 16.) Roscoe tried to crawl toward the house and Ms. Skinner, who moved closer to her dog. (Doc. 1 at ¶ 17.) Deputy McLin attempted to shoot Roscoe again and missed. (Doc. 1 at ¶ 18.) Deputy McLin then took a few steps, shot Roscoe in the head and killed Roscoe. (*Id.*) Mr. Causey arrived at the home shortly thereafter and observed the grief-stricken Ms. Skinner and the deceased Roscoe. (Doc. 1 at ¶ 19.) After Roscoe's death, Ms. Skinner and Mr. Causey suffered mental anguish due to Roscoe's death and witnessing Deputy McLin shooting him. (Doc. 1 at ¶ 24.)

## APPLICABLE STANDARD

In *Johnson v. City of Shelby, Mississippi,* 574 U.S. 10, 135 S.Ct. 346 (2014), the Supreme Court has explained:

> Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. See Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Marcus, & A. Steinman, Federal Practice and Procedure 644 (2014) (Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement"); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215, p. 172 (3d ed. 2004) (Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases

turning on technicalities"). In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim. See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"); *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)").

*Id.*, 574 U.S. at 11.

Interpreting Rule 8(a) and *Twombly,* the Fifth Circuit explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir.2009) (quoting *Twombly,* 127 S.Ct. at 1965) (emphasis added, footnotes omitted).

Analyzing the above case law, the Western District of Louisiana stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 129 S.Ct. at 1949, *Twombly,* 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257, *Twombly,* 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, No. 10–177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

Finally, in *Thompson v. City of Waco, Texas,* 764 F.3d 500 (5th Cir.2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

## DISCUSSION

*a. Deputy McLin's arguments*

1. <u>Plaintiffs have not stated an independent cause of action against Deputy McLin under federal law.</u>

The Deputy pleads qualified immunity, and as such argues that there is a heightened pleading standard pursuant to *Morin v. Claire*, 77 F.3d 116, 121 (5th Cir. 1996). (Doc. 6-1 at 4.) Specifically, that to overcome qualified immunity, "The plaintiff must support his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of a defendant's conduct." (Doc. 6-1 at 4-5 (citing, *Shultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995)).)

The Deputy argues that the *Complaint* fails to plead sufficient facts to demonstrate a constitutional violation under current law or that Deputy McLin's actions were objectively unreasonable in light of the current law that was clearly established at the time. (Doc. 6-1 at 6 (citing *Atteberry v. Nocona Gen'l Hosp.*, 430 F.3 245, 253 (5th Cir. 2005)).) The Deputy maintains that courts consider a number of factors when considering the totality of the

4

circumstances to determine if killing a dog to protect officer safety was reasonable. The factors include: (1) the demeanor of the dog at the time of the incident; (2) the dog's past tendencies for displaying aggressive behavior; (3) whether the officer had knowledge of the dog's presence or were surprised by the dog's approach; (4) whether the officer took less drastic alternative methods to killing the dog; (5) the breed of the dog, its size and its characteristics for aggressive behavior. (Doc. 6-1 at 7.) The Deputy maintains that in considering reasonableness, the Court "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (Doc. 6-1 at 7-8 (quoting *Brown v. Battle Creek Police Dep't*, 844 F.3d 568, 572 (6th Cir. 2016)).)

> Applying these factors, the Deputy argues
>
> Here, the plaintiffs do not plead nearly sufficient facts to demonstrate that Deputy McLin's actions were excessive or unreasonable under the circumstances. In sum, plaintiffs plead that their dog was running free on the property and was not contained in any way. . . . Plaintiffs also plead that their dog ran at Deputy McLin, approached him from behind, and bit or attempted to bite Deputy McLin's right leg. Though plaintiffs plead that the dog was running away from Deputy McLin when it was shot, there are no allegations that the dog was contained or under control at the time of the shooting.

(Doc. 6-1 at 8.)

The Deputy asserts that Plaintiffs allegations are conclusory arguments of law and that there are not sufficient facts in the *Complaint* to either state a claim or to overcome his claim of qualified immunity. (Doc. 6-1 at 8-9.) The Deputy analogizes this case to that of *Stephenson v. McClelland*, 632 Fed. Appx. 177 (5th Cir. 2015), in which a deputy was surprised by a large dog, and shot the dog once, which led to the dog dying later that day. The Fifth Circuit affirmed that qualified immunity for the deputy was appropriate, explaining:

> Officer Duncan did not know there would be a dog present during his encounter with Karlton and was surprised by its presence. While Karlton knew his family pet

5

> to be friendly and nonaggressive, Officer Duncan did not. Officer Duncan was startled by a large dog that was showing its teeth (whether baring them aggressively or "smiling"). Officer Duncan was forced to make a split-second judgment in a tense situation and he acted to protect himself. Accordingly, we conclude that Officer Duncan is entitled to qualified immunity on these claims.

(Doc. 6-1 at 11 (citing, *Stephenson*, 632 Fed. Appx. at 185 (internal citations omitted)).)

2. <u>Plaintiffs have not stated a claim against Deputy McLin under Louisiana state law.</u>

The Deputy likewise argues that Plaintiffs do not state a claim under Louisiana law because there are not sufficient facts alleged in the *Complaint* to state a plausible claim that Deputy McLin is liable for conversion. (Doc. 6-1 at 11.) The Deputy points the Court to La. R.S. 3:2773(D), which states, "Any citizen or officer may kill any dangerous or vicious dog, and no citizen or officer shall be liable to damages or to prosecution by reason of killing any dangerous or vicious dog." (Doc. 6-1 at 11.) The Deputy states:

> The test is whether a reasonable person under similar circumstances would have concluded that the dog was dangerous under the statute. What must be shown to be granted immunity under the circumstances is that the defendant, when confronted with the alleged events, acted in what he thought to be the most expedient and prudent manner in protecting himself from immediate danger. That danger need not exist, as it is only necessary that the actor have grounds which would lead an ordinary, reasonable man to believe it exists, and that he believes so.

(Doc. 6-1 at 12 (citing *Herbert v. Broussard*, 2004-485 (La. App. 3 Cir. 11/10/04), 886 So.2d 666), 664-670.)

3. <u>Plaintiffs are not entitled to recover the types of damages requested in the *Complaint*.</u>

The Deputy argues that Plaintiffs have no legal cause to recover *Lejune* damages for the death of their dog. (Doc. 6-1 at 12.) In *Lejune v. Rayne Branch Hosp.*, 556 So. 2d 559, 570 (La. 1990), the Louisiana Supreme Court recognized that parties can recover mental pain and anguish claims arising out of an injury to a third party. (Doc. 6-1 at 13.) However, the Deputy points out that La. Civ. Code art. 2315.6 states:

> A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
>
> (1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
>
> (2) The father and mother of the injured person, or either of them.
>
> (3) The brothers and sisters of the injured person or any of them.
>
> (4) The grandfather and grandmother of the injured person, or either of them.

(Doc. 6-1 at 14 (citing, La. Civ. Code Ann. art. 2315.6).) The Deputy argues that the relationship between members of a family are not the same as between a dog and an owner. (*Id.*) Further the Deputy maintains the word "persons" does not include a dog because under La. R.S 3:2773, dogs are not classified as persons but as personal property. (*Id.*) In addition, the Deputy details that there is no allegation that they suffered severe and debilitating emotional distress. (Doc. 6-1 at 15.) As such, the Deputy maintains that the Plaintiffs are not entitled to *Lejune* damages for witnessing the death of a dog. (*Id.*)

The Deputy likewise contends that the *Complaint* does not state a cause of action for recovery of medical or veterinary expenses because they have not pled any medical or veterinary expenses were incurred as a result this shooting. (*Id.*)

The Deputy asserts that Plaintiffs cannot recover for a loss of sense of security and trust for law enforcement because those damages are not legally recoverable and are highly speculative. (*Id.*) The Deputy maintains that a loss of sense of security and trust for law enforcement is included in a mental anguish award but is not a separate claim for damages. (Doc. 6-1 at 15-16.)

The Deputy argues that Louisiana jurisprudence does not allow Plaintiffs to recover mental anguish or emotional distress damages based on the destruction of property unless the emotional distress is severe. (Doc. 6-1 at 16.) The Deputy states that Louisiana law dictates:

> Damages are generally awarded when the property is lost or damaged by: (1) an intentional or illegal act; (2) an act for which the tortfeasor will be strictly or absolutely liable; (3) acts constituting nuisance; or (4) acts occurring when the owner is present or at the time, or shortly after, damage was negligently inflicted and suffers psychic trauma as a result.

(Doc. 6-1 at 16 (citing, *Bayer v. Starr Int'l Corp.*, 2017-0948 (La. App. 4 Cir. 5/2/18), 246 So. 3d 46, 49).) Interpreting this provision, the Louisiana Court of Appeals has explained that there must be "evidence in the record that plaintiff suffered extreme damages from mental anguish as a result of the loss" and "real psychic trauma." (Doc. 6-1 at 16 (citing, *Bourgeois v. Allstate Ins. Co.*, 02-105 (La. App. 5 Cir. 5/29/02), 820 So. 2d 1132, 1137).) The Deputy maintains that the *Complaint* does not sufficiently allege severe mental anguish and real psychic trauma as the result of the death of their dog. (Doc. 6-1 at 17.)

b. *Plaintiffs' response to Deputy McLin's arguments*

1. <u>Deputy McLin is not entitled to the qualified immunity defense.</u>

Overall, Plaintiffs asserts that the *Complaint* states a plausible claim for relief. Plaintiffs maintain that the killing of a companion animal is a seizure under the Fourth Amendment and Article 1, § 5 of the Louisiana Constitution. (Doc. 10 at 3-4.) Plaintiffs state that the Deputy is not entitled to qualified immunity because Deputy McLin's actions were not objectively reasonable in light of the legal rules clearly established at the time of his actions. (Doc. 10 at 3-4.) Plaintiffs state that Deputy McLin's actions were not objectively reasonable because:

> Deputy McLin was on Plaintiffs' property to serve a civil jury warrant, not to investigate criminal activity, therefore Deputy McLin was not performing any investigations with which Roscoe may have interfered. Deputy McLin blatantly ignored Ms. Skinner's directions to remain by his unit until she brought Roscoe into the house. Most importantly, at the time that Deputy McLin fired multiple

shots, Roscoe had retreated from Deputy McLin and was within reaching distance of Ms. Skinner, who was physically reaching for Roscoe to bring him into the home at the time the shots were fired. Deputy McLin was **never** in immediate danger of severe bodily harm or death. Especially at the time that he fired his gun, Deputy McLin was **not** in danger of severe bodily harm or death.

(Doc. 10 at 4.) Because these actions were not objectively reasonable, Plaintiffs maintain that Deputy McLin is not entitled to qualified immunity. (Doc. 10 at 4.)

2. <u>Roscoe was not a vicious dog, therefore LA R.S. 3:2773 does not shield Deputy McLin from liability.</u>

Plaintiffs also detail that whether a dog is "vicious" or "dangerous" under La. R.S. 3:2773, is a question of fact that must be determined by evidence on a case by case basis. (Doc. 10 at 4 (citing *Herbert v. Broussard*, 04-0485 (La. App. 3d Cir. 11/10/04), 886 So. 2d 666, 669).) Plaintiffs outline that the test under La. R.S. 3:2773 is whether a reasonable person under similar circumstances would have concluded that the dog was dangerous. (Doc. 10 at 5.) Plaintiffs argue that the *Complaint* sets out sufficient facts to allege that "Roscoe was neither vicious nor dangerous" when "Deputy McLin drew his weapon and fired his shots." (Doc. 10 at 5.) As such, Plaintiffs argue that state law defense does not apply. (Doc. 10 at 5.)

3. <u>Plaintiffs are entitled to emotional distress damages.</u>

Plaintiffs argue that they are entitled to emotional distress damages because courts have recognized that the relationship between a dog and his owner is not comparable to a possessory interest in furniture. (Doc. 10 at 5 (citing, *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. . . . The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.") (internal citations omitted)).) Plaintiffs highlight that the *Complaint* alleges that following Roscoe's death, Ms. Skinner was "grief-stricken." (Doc. 10 at 5.) Plaintiffs maintain that is sufficient to allege an injury that is "severe, debilitating, and

foreseeable" emotional distress. (Doc. 10 at 5 (citing La. Civ. Code art. § 2315.6.) Further, Plaintiffs argue that veterinary expenses naturally occurred from Roscoe's death for the disposal of his body. (Doc. 10 at 5.) In addition, Plaintiffs argue that a loss and sense of security and trust in law enforcement flows naturally from the incident with Deputy McLin. (Doc. 10 at 5-6.) Overall, Plaintiffs argue that the type of damages and the amount of damages will be a question of fact and it is not appropriate to consider at this time. (Doc. 10 at 6.)

    4. <u>Leave to amend.</u>

In the alternative, the Plaintiffs request leave to amend the *Complaint* to set forth more facts pursuant to Federal Rule of Civil Procedure 15. (Doc. 10 at 6.)

c. *Deputy McLin's reply*

    1. <u>Plaintiffs have not pled facts to overcome Deputy McLin's qualified immunity.</u>

The Deputy argues that Plaintiffs do not allege in the *Complaint*, nor argue in their opposition, that "every reasonable officer would know that using deadly force against a dog running at large that had already bit an officer would violate [P]laintiffs' Fourth Amendment rights." (Doc. 15 at 1.) The Deputy argues that whether an officer is entitled to qualified immunity depends on the "objective legal reasonableness" of the action, in light of the "clearly established" legal rules at the time the action was taken. (Doc. 15 at 2.) The Deputy maintains that "clearly established law" means that "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (Doc. 15 at 2 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).) As such, "existing precedent must have placed the statutory or constitutional question beyond debate." (*Id.*)

The Deputy points out that the *Complaint* itself alleges that Roscoe bit Deputy McLin. (Doc. 15 at 2 (citing Doc. 10 at 2).) The Deputy argues that "unless case law establishes 'beyond debate' that Deputy McLin was required to wait for the dog to charge him for a second time

10

before he used deadly force" then Deputy McLin is still entitled to qualified immunity. (Doc. 15 at 2-3.)

    2. <u>Plaintiffs are not entitled to damages sought.</u>

The Deputy details that the *Motion* does not argue that the level of legal damages is inappropriate but rather that the types of damages are not available to Plaintiffs under Louisiana law. (Doc. 15 at 3.) The Deputy reiterates that (1) "*Lejune* damages are not recoverable for the death of an animal;" (2) "grief-stricken" is not an allegation of "severe and debilitating emotional distress;" (3) no medical or veterinary expenses were alleged or could have been incurred by a dead dog; and (4) a separate damage award does not exist for a loss of a sense of security and trust for law enforcement. (Doc. 15 at 4.) Moreover, the Deputy states that unlike Plaintiff's claim that pets are not akin to personal property, those damages are not available under Louisiana law because Plaintiffs did not assert "extreme damages akin to physical injury that is required to recover damages for mental anguish." (Doc. 15 at 5.)

d. *Analysis*

    1. <u>Does the *Complaint* fail to state a claim under federal law?</u>

        A. <u>*Applicable law of qualified immunity.*</u>

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002)).

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

" 'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks in *White* omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks in *White* omitted)). " 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Id.* at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks in *White* omitted)). "But ... [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).

Further, Fifth Circuit case law is clear on discovery and qualified immunity. " 'One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive.' " *Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). " 'Consequently, [the Fifth Circuit] has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.' " *Id.* at 485 (quoting *Backe*, 691 F.3d at 648). "[A] district court must first find 'that the

12

plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity.' " *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) ).

> 'Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.' *Backe,* 691 F.3d at 648. "After the district court finds a plaintiff has so pleaded, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.' " *Id.* (quoting *Lion Boulos v. Wilson,* 834 F.2d 504, 507–08 (5th Cir.1987)).

*Zapata*, 750 at 485.

### A. *Shooting a dog can be a seizure under the Fourth Amendment*

The Fifth Circuit has recognized that "[t]he killing of a pet dog can be a seizure." *Jones v. Lopez*, 689 F. App'x 337, 339 (5th Cir. 2017) (per curiam); *see, e.g.*, *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016) (collecting cases).[1] The Fifth Circuit explained:

> In *Grant*, law enforcement officers were conducting a search of a suspect's garage pursuant to a warrant when they were confronted by a three-legged pit bull that appeared aggressive to the officers. *Grant*, 625 Fed.Appx. at 672. During the search, the dog charged towards one of the officers who was forced to kick the dog to prevent it from biting his legs. *Id.* Witnessing the dog's continued aggressive behavior, the officer shot and killed the dog to prevent it from attacking him. *Id.* On appeal, we addressed the plaintiff's claim that the officers used excessive force to seize the dog in violation of the Fourth Amendment. *Id.* at 675. Relying on a case from the Ninth Circuit, we concluded that "[i]t is beyond dispute that [the officer] 'seized' [the dog] within the meaning of the Fourth Amendment." *Id.* Based on *Grant*, we reached the same conclusion in *Stephenson*. *See* 632 Fed. Appx. at 184.

*Jones v. Lopez*, 689 F. App'x 337, 339 (5th Cir. 2017) (citing, *Grant v. City of Houston*, 625 Fed. App'x 670, 675 (5th Cir. 2015); and *Stephenson v. McClelland*, 632 F..App'x 177, 184 (5th Cir. 2015)).

---

[1] The Fourth Circuit provided an in-depth analysis of the history of dogs and the Fourth Amendment concluding that killing a pet dog is a seizure under the Fourth Amendment. *Altman v. City of High Point,* 330 F.3d 194, 203 (4th Cir. 2003).

13

B. *Objectively reasonable nature of the actions*

The Deputy acknowledges that killing a pet dog can be a seizure but maintains that qualified immunity is appropriate because his actions were objectively reasonable. (Doc. 6-1 at 10-11.) The Plaintiffs argue that Deputy McLin's actions were unreasonable because as the *Complaint* alleges:

> Deputy McLin was on Plaintiffs' property to serve a civil jury warrant, not to investigate criminal activity, therefore Deputy McLin was not performing any investigations with which Roscoe may have interfered. Deputy McLin blatantly ignored Ms. Skinner's directions to remain by his unit until she brought Roscoe into the house. Most importantly, at the time that Deputy McLin fired multiple shots, Roscoe had retreated from Deputy McLin and was within reaching distance of Ms. Skinner, who was physically reaching for Roscoe to bring him into the home at the time the shots were fired.

(Doc. 10 at 4.) The Deputy maintains that, as the *Complaint* alleges, when he shot Roscoe, Roscoe had already nipped his leg and was not restrained. (Doc. 6-1 at 9.)

"It is objectively reasonable for an officer to shoot a dog that he reasonably believes poses a threat." *Romero v. Bexar Cty.*, 993 F. Supp. 2d 658, 662 (W.D. Tex. 2014) (citing *Altman v. City of High Point*, 330 F.3d 194, 206 (4th Cir. 2003)). However, courts applying qualified immunity to officer involved shootings of dogs arrive at different conclusions. For example,

> In *Jones v. Lopez*, . . . the Fifth Circuit found a fact dispute to exist where the plaintiffs witnessed the officers shooting their dog multiple times as the dog was running away, contradicting the officers' explanation that they shot the dog when it charged. In *Kincheloe v. Caudle*, too, an eyewitness contradicted the officer's claim that a dog charged him by providing evidence that the dog was sitting next to the family's porch before walking slowly toward some nearby bushes when shot.

*Reyes v. City of Austin*, No. 1:15-CV-327-RP, 2017 WL 3470942, at *6 (W.D. Tex. Aug. 11, 2017) (internal citations omitted). When determining if qualified immunity applies, the Fifth Circuit has instructed that courts

> [a]nalyze this question from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,] and allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015) (internal quotations and citations omitted).

The factual allegations in the *Complaint* regarding Deputy McLin's action are troubling. Specifically, the *Complaint* alleges that Roscoe was retreating when Deputy McLin fired the second shots that killed him. (Doc. 1 at ¶¶ 17-18.) However, the factual allegations in the *Complaint* do not set out that Roscoe was in no way a potential threat when Deputy McLin fired the second shots. In addition, Deputy points out, the *Complaint* also provides conclusory allegations that "there was no justifiable cause for Deputy McLin to discharge his firearm or use deadly force upon Roscoe" and that "Deputy Mclin acted unreasonably under the circumstances." (Doc. 1 at ¶¶ 20 & 31.) This post-hoc rationalization that Deputy McLin "reasonably could have and should have employed non-lethal methods to restrain Roscoe, rather than killing him; or could have gone back to his vehicle as Ms. Skinner advised initially; or allowed Ms. Skinner to retrieve her dog and put him back in the house" does not overcome the qualified immunity in this case. For Plaintiffs to show that qualified immunity is not appropriate, they must set out specific facts showing the objective unreasonableness of Deputy McLin's actions, including that Roscoe did not pose a threat to Deputy McLin when he fired the shots that killed him. Therefore, the federal law claims for unreasonable seizure under the Fourth Amendment will be dismissed.

2. Does the *Complaint* state a claim under state law?

Similarly, Deputy McLin details that La. R.S. 3:2773 provides statutory immunity to his actions in protecting himself from a "vicious" or "dangerous" dog. La. R.S. 3:2773(D) states:

15

"Any citizen or officer may kill any dangerous or vicious dog, and no citizen or officer shall be liable for damages or to prosecution by reason of killing any dangerous or vicious dog." Under the statute, "[w]hether or not a dog is "vicious" or "dangerous" is a factual determination which must be determined on a case-by-case basis. The test is whether a reasonable person under similar circumstances would have concluded that the dogs were dangerous." *Hebert v. Broussard*, 2004-485 (La. App. 3 Cir. 11/10/04), 886 So. 2d 666, 669. The Louisiana Court of Appeals has explained that what must be shown to have the statutory immunity of La. R.S. 3:2773(D) apply is:

> [T]hat this defendant, when confronted with events such as these, acted in what he thought to be the most expedient and prudent manner in protecting himself or his family from what appeared to him to be an immediate and impending danger. The danger need not actually exist. It is only necessary that the actor have grounds which would lead an ordinary, reasonable man to believe it exists, and that he so believes. All the pertinent facts should be taken into account in assessing the reasonableness of the belief.

*Hebert* 886 So. 2d at 670. Here the Court agrees with the Plaintiffs that whether a dog is "vicious" or "dangerous" is a question of fact and therefore determining whether the statutory immunity applies is not appropriate when deciding on a motion to dismiss. Therefore, the Court will not dismiss the state law claim against the Deputy.

3. <u>Are Plaintiffs' entitled to the types of damages sought under Louisiana law?</u>

The *Motion* asks the Court to determine as a matter of law that Plaintiffs are not entitled to recover certain types of damages under Louisiana law. (Doc. 6-1 at 14-15.) First, the Deputy maintains that *Lejune* damages are not applicable. The Court agrees. Under the plain language of La. Civ. Code art. 2315.6 *Lejune* damages are limited to persons "who view an event causing injury to another person." Although, dogs can have a significant role in a family, under La. R.S 3:2773(A), "Dogs owned by citizens of this state . . . are declared to be personal property of such

16

citizens." As a dog is not a person, Plaintiffs are not entitled to recover *Lejune* damages in this case.

Second, the Deputy maintains that there are not facts alleged regarding medical or veterinary expenses as a result of Roscoe's death. (Doc. 6-1 at 15.) The Court agrees that no facts are alleged regarding medical and veterinary expenses and will therefore dismiss the damages claim without prejudice.

Third, the Deputy argues that Louisiana jurisprudence does not allow Plaintiffs to recover damages for destruction of property unless the emotional distress is severe. (Doc. 6-1 at 16-17.) Emotional distress damages are recoverable under Louisiana law when:

> Damages are generally awarded in property damages cases when the property is damaged by: (1) an intentional or illegal act; (2) an act for which the tortfeasor will be strictly or absolutely liable; (3) acts constituting nuisance; or (4) acts occurring when the owner is present or at the time, or shortly after, damage was negligently inflicted and suffers psychic trauma as a result.

*Bayer v. Starr Int'l Corp.*, 2017-0948 (La. App. 4 Cir. 5/2/18), 246 So. 3d 46, 49). As such, Plaintiffs must allege facts to show that they "suffered extreme damages from mental anguish as a result of the loss" and "real psychic trauma." *Bourgeois v. Allstate Ins. Co.*, 02-105 (La. App. 5 Cir. 5/29/02), 820 So. 2d 1132, 1137. Plaintiffs maintain that the allegations regarding death of their beloved family pet, who had been part of the family for six-years, whose death in Ms. Skinner's proximity left her grief stricken is sufficient to state a claim for emotional distress damages. (Doc. 10 at 5-6.) The Court agrees. Dogs can play a special role in a family and the *Complaint* alleges sufficient facts as to the mental anguish Plaintiffs suffered as a loss to state a claim for emotional distress damages.

Last, the Deputy asserts that Plaintiffs cannot recover for a loss of sense of security and trust for law enforcement because those damages are not legally recoverable and are highly speculative and that any such claim is included in a mental anguish award. (Doc. 6-1 at 15-16.)

The Court agrees with the Defendant. Any damages arising from Plaintiffs' loss of sense of security and trust for law enforcement is included as a part of emotional distress damages. As the Court explained, Plaintiffs have alleged sufficient facts to state an emotional distress claim. Therefore, the *Motion* is denied as to whether Plaintiffs have stated a claim for emotional distress damages.

4. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification ... is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013). Finally, one leading treatise explained:

> As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016). Here, Plaintiffs ask for leave to amend their *Complaint* in the event the Court found that there are deficiencies; therefore, the Court will act in accordance with the "wise judicial practice" and general rule and allow leave to amend.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 6) filed by Defendant Deputy Barney McLin is **GRANTED IN PART** and **DENIED IN PART;**

**IT IS FURTHER ORDERED** that the Plaintiffs claim under § 1983 and for medical and veterinary expenses are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the Plaintiffs' claim for *Lejune* damages is **DISMISSED WITH PREJUDICE**. In all other respects, the *Motion* is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs may file an amended complaint within 28 days of entry of this Ruling and Order. If Plaintiffs do not file an amended complaint within 28 days, the Court will dismiss the claims under § 1983 and for medical and veterinary expenses with prejudice. Defendant is instructed to contact the Court if the 28-day period passes and Plaintiffs have failed to file any amended complaint.

Signed in Baton Rouge, Louisiana, on February 10, 2020.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**