UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISISANA

TONIA M. SKINNER AND
GREGORY W. CAUSEY

CIVIL ACTION

VERSUS

NO. 19-66-JWD-EWD

JASON ARD, AS SHERIFF OF
THE PARISH OF LIVINGSTON,
THE LIVINGSTON PARISH SHERIFF'S OFFICE
AND DEPUTY BARNEY MCLIN

RULING AND ORDER

This matter is before the Court on a *Motion to Dismiss Pursuant to Rule 12(b)(6)* filed by Jason Ard in his personal and official capacity and the Livingston Parish Sheriff's Office ("Sheriff Ard" or "Sheriff"), (Doc. 5). In response, Tonia M. Skinner ("Ms. Skinner") and Gregory W. Causey ("Mr. Causey") (together the "Plaintiffs") filed their opposition to the *Motion*. (Doc. 9.) Sheriff Ard filed a reply. (Doc. 15.) Oral argument is not necessary. Having considered the allegations in the complaint, the arguments, the law and for reasons expressed below, the *Motion* is granted in part and denied in part.

FACTS

For the purpose of ruling on the *Motion* the Court accepts the following facts alleged in the *Complaint* as true.

Deputy McLin is a civil processing officer who works at the Livingston Parish Sheriff's Office. (Doc. 1 at ¶ 11.) Deputy McLin's responsibility was service of civil summons in Livingston Parish. (*Id.*) Sheriff Ard is the Sheriff of Livingston Parish. (Doc. 1 at ¶ 5.)

On February 1, 2018, Deputy McLin arrived at Plaintiff's house to serve Ms. Skinner with a jury summons. (Doc. 1 at ¶ 12.) When Deputy McLin arrived, Ms. Skinner informed the Deputy that her dog Roscoe had been let out and asked him to wait by his unit until Roscoe was

1

back in the house. (Doc. 1 at ¶ 13.) Roscoe was a six-year-old Weimaraner dog who had lived with and was cared for by the Plaintiffs for six years. (Doc. 1 at ¶ 25.) Roscoe was confined to Plaintiffs' home and/or back yard and rarely left. (Doc. 1 at ¶ 27.) Deputy McLin proceeded towards Ms. Skinner on her property. (Doc. 1 at ¶ 14.) Because Deputy McLin was warned that Roscoe was out, he was not surprised by Roscoe. (Doc. 1 at ¶ 29.) Roscoe ran from the back of the house and towards Ms. Skinner and Deputy McLin. (Doc. 1 at ¶ 14.) Roscoe ran to the back of Deputy McLin and nipped at his lower right rear calf area. (Doc. 1 at ¶ 15.) Roscoe then ran back toward Ms. Skinner who reached toward Roscoe to bring him inside. (*Id.*)

As Roscoe was running back towards Ms. Skinner, Deputy McLin pulled his personally owned weapon and shot Roscoe twice in the side. (Doc. 1 at ¶ 16.) Roscoe tried to crawl toward the house and Ms. Skinner, who moved closer to her dog. (Doc. 1 at ¶ 17.) Deputy McLin attempted to shoot Roscoe again and missed. (Doc. 1 at ¶ 18.) Deputy McLin then took a few steps, shot Roscoe in the head and killed Roscoe. (*Id.*) Mr. Causey arrived at the home shortly thereafter and observed the grief-stricken Ms. Skinner and the deceased Roscoe. (Doc. 1 at ¶ 19.) After Roscoe's death, Ms. Skinner and Mr. Causey suffered mental anguish due to Roscoe's death and witnessing Deputy McLin shooting him. (Doc. 1 at ¶ 24.)

The Sheriff "maintained, enforced, tolerated, permitted, and applied policies, practices, or customs and usages of (including but not limited to) subjecting citizens to unreasonable seizures by failing to adequately train, supervise, and equip employees to properly handle dog/animal encounters." (Doc. 1 at ¶ 30.) Further the Sheriff's "failure to train and/or equip Deputy McLin to properly handle dog/animal encounters without the use of lethal force." (Doc. 1 at ¶ 31.) In addition, that "Defendants, Sheriff Ard . . . had a policy, practice, or custom of failing to train or

failing to adequately train its officers regarding use of lethal force and handling dog/animal encounters." (Doc. 1 at ¶ 32.)

## APPLICABLE STANDARD

In *Johnson v. City of Shelby, Mississippi,* 574 U.S. 10, 135 S.Ct. 346 (2014), the Supreme Court has explained:

> Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. See Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Marcus, & A. Steinman, Federal Practice and Procedure 644 (2014) (Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement"); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215, p. 172 (3d ed. 2004) (Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities"). In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim. See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"); *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)").

*Id.*, 574 U.S. at 11.

Interpreting Rule 8(a) and *Twombly,* the Fifth Circuit explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir.2009) (quoting *Twombly,* 127 S.Ct. at 1965) (emphasis added, footnotes omitted).

Analyzing the above case law, the Western District of Louisiana stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 129 S.Ct. at 1949, *Twombly,* 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257, *Twombly,* 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, No. 10–177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

Finally, in *Thompson v. City of Waco, Texas,* 764 F.3d 500 (5th Cir.2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

## DISCUSSION

*a. Sheriff Ard's arguments*

1. <u>The Livingston Parish Sheriff's Office is not an entity capable of being sued.</u>

The Sheriff argues that the Livingston Parish Sheriff's Office is not a legal entity capable of being sued; therefore any claims against it should be dismissed. The Sheriff maintains that although Rule 12(b)(6) does not specifically address a lack of capacity to be sued, "federal courts

. . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or statute[,] . . . such as motions raising . . . a lack of capacity to sue or be sued" (Doc. 5-1 at 4-5 (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d. ed. 2016)).)

Further, the Sheriff argues that Rule 17(b) instructs that "capacity to sue or be sued shall be determined . . . by the law of the state in which the [c]ourt is located." (Doc. 5-1 at 5 (citing Fed. R. Civ. P. 17(b)). As such, the Sheriff outlines that Louisiana law dictates that to have capacity to be sued, an entity must be a juridical person, meaning "an entity to which the law attributes personality, such as a corporation or partnership." (Doc. 5-1 at 5 (citing La. Civ. Code art. 24.) A parish sheriff's office does not have legal status it is therefore not capable of being sued. (Doc. 5-1 at 5 (citing among others *Valentine v. Bonneville Ins. Co.*, 96-1382 (La. 3/17/97), 691 So.2d 665, 668).)

2. <u>Plaintiffs have not stated an independent cause of action against Sheriff Ard under federal law.</u>

The Sheriff argues that the *Complaint* is devoid of factual allegations regarding his actions and merely relies on conclusory allegations as to the Sheriff's failure to properly train, the Sheriff's policy practice or custom regarding lethal force with animal encounters, and/or failure to institute a policy regarding lethal force with animal encounters. (Doc. 5-1 at 6-7.)

    A. *Sheriff Ard cannot be held vicariously liable.*

The Sheriff argues that "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." (Doc. 5-1 at 7 (quoting, *Iqbal*, 556 U.S. 662, 676 (2009)).) As such, the Sheriff maintains that "the law is now settled that in a section 1983 action a Louisiana sheriff may not be held liable for the acts of his deputies under the doctrine of *respondeat superior* or any other theory of vicarious liability."

(Doc. 5-1 at 7 (quoting *Campbell v. Bergeron*, 486 F. Supp. 1246, 1248 (M.D. La. 1980)).) Therefore, the Sheriff seeks dismissal with prejudice of any *respondeat superior* claims under § 1983 case. (Doc. 5-1 at 7-8.)

### B. *Plaintiffs have not stated a claim against Sheriff Ard in his official capacity.*

The Sheriff argues that to maintain an official capacity claim Plaintiffs must allege that he is "a policy maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." (Doc. 5-1 at 8 (citing *Zarnow v. City of Wichita Falls, TX* 614 F.3d 161, 165 (5th Cir. 2010)).) Although the Sheriff concedes that he is the policymaker for the Livingston Parish Sheriff's Office, the Sheriff maintains that Plaintiffs have only made conclusory allegations regarding any policy, practice or custom. (Doc. 5-1 at 8-9.) This is insufficient because Plaintiffs have neither provided a specific policy at issue nor outlined a persistent widespread practice of city officials. (Doc. 5-1 at 10 (citing *Norton v. Livingston Par. Det. Ctr.*, No. 13-437, 2013 WL 55149400, at 5 (M.D. La. Oct. 2, 2013).) The Sheriff asserts that to set out a claim in the official capacity, it is necessary to allege what the policies/customs were or what the policies/customs involved, and not merely refer to policies/customs in the abstract. (Doc. 5-1 at 13.) The Sheriff likewise argues that Plaintiffs have failed to allege facts to show that any policy or custom was adopted with deliberate indifference to the known or obvious consequences of the constitutional violation that would result. (Doc. 5-1 at 11.)

### C. *Plaintiffs have not stated a claim against Sheriff Ard in his personal capacity.*

The Sheriff argues that Plaintiffs claim in his individual capacity also fails because Plaintiffs have not alleged that the Sheriff was personally involved in the deprivation; that he was present during the encounter; or that his actions were causally connected to the alleged deprivation. (Doc. 5-1 at 14-15.) Specifically, the Sheriff asserts that to state a claim in his personal capacity, Plaintiffs need to allege facts to show that there was a failure to train or

supervise deputes that was causally connected to the alleged constitutional deprivation, and that the failure to train or supervise amounted to deliberate indifference. (Doc. 5-1 at 14.) The Sheriff maintains that Plaintiffs simply do not allege facts sufficient to meet these requirements. (*Id.*)

The Sheriff also argues that even if the Plaintiffs had alleged facts sufficient to state a personal capacity claim, Plaintiffs have not overcome his qualified immunity defense. (Doc. 5-1 at 14.) The Sheriff maintains that Plaintiffs have not alleged sufficient facts support a plausible claim that Sheriff Ard's conduct: "(1) violated a clearly established federal constitutional right; and (2) was not objectively reasonable in light of clearly established law." (Doc. 5-1 at 16-17 (citing, *Cox v. Kaelin*, 577 F. App'x 306, 313 (5th Cir. 2014)).)

3. Plaintiffs have not stated a claim against Sheriff Ard under state law.

The Sheriff likewise argues that the state law claims should be dismissed because Plaintiffs rely on conclusory allegations, not specific facts, in support of their state law claims. (Doc. 5-1 at 17.) Further, the Sheriff outlines that La. R.S. 9:2798.1 provides immunity to the Sheriff for any negligent hiring, training, retention, or supervision because it is within his discretion as the Sheriff. (Doc. 5-1 at 17-18.) In support, the Sheriff directs the Court to *Hoffpauir v. Columbia Cas. Co.*, No. 12-403-JBB-SCR, 2013 WL 5934699, at *12-13 (M.D. La. Nov. 5, 2013), in which Judge Brady found that a discretionary function of the Livingston Parish Sheriff's Department was the hiring, training, and supervision policy, and applied La R.S. 9:2798.1 to grant immunity to the Sheriff. (Doc. 5-1 at 18.)

Last, the Sheriff argues that because the state law claims against Deputy McLin should be dismissed, the state law claim for *respondeat superior* liability should likewise be dismissed. (Doc. 5-1 at 19.)

b. *Plaintiffs' response to Sheriff Ard's arguments*

7

1. <u>Complaint lays out causes of action against Sheriff Ard in his official and individual capacity.</u>

Plaintiffs generally argue that the *Complaint* sets forth sufficient facts to state a plausible claim for relief. (Doc. 9 at 3.) Specifically, Plaintiffs maintain that the *Complaint* alleges causes of action under federal and state law against Sheriff Ard in his official and personal capacity. (Doc. 9 at 3.) Plaintiffs assert that the actions of Deputy McLin are sufficient to show that there was a failure to hire, train, or supervise or in the alternative that the Sheriff failed to institute a policy for animal encounters and the use of force. (Doc. 9 at 3.) Plaintiffs outline that "without the benefit of discovery, it is impossible to point to specific policies that the Sheriff may or may not have enacted and followed to appropriately hire, train, and supervise his forces, or specific instances or patterns of which the Sheriff was knowledgeable." (Doc. 9 at 3.) Plaintiffs support this argument by stating that most of the cases cited by the Sheriff involved motions for summary judgment or after a jury trial. (Doc. 9 at 4.)

2. <u>Sheriff Ard is not entitled to a qualified immunity defense.</u>

Plaintiffs argue that qualified immunity is not appropriate because killing a companion animal is a seizure under the Fourth Amendment and under Article 1, § 5 of the Louisiana Constitution. (Doc. 9 at 5.) Further, Plaintiffs maintain that Deputy McLin's actions were objectively unreasonable in light of the fact that Deputy McLin was delivering a civil jury warrant, ignored Ms. Skinner's direction to remain in his car until Roscoe was secured, and killed Roscoe when he was crawling away injured to Ms. Skinner. (Doc. 9 at 5-6.) Because Deputy McLin took this allegedly unreasonable action, Plaintiffs reason that Sheirff Ard must have either not had a policy in place regarding animal encounters or failed to hire, supervise, and train Deputy McLin. (Doc. 9 at 6.) As such, Plaintiffs maintain the Sheriff is not entitled to qualified immunity. (Doc. 9 at 6.)

3. Not entitled to state law qualified immunity defense.

In addition, Plaintiffs argue that under La. R.S. 9:2798.1(C)(2) public officials are not entitled to immunity for "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." (Doc. 9 at 6.) Plaintiffs detail that a failure to have a policy in place regarding the use of force in animal encounters is willful, outrageous and flagrant misconduct by the Sheriff. (Doc. 9 at 6.) Therefore, they reason the Sheriff cannot use this immunity as a defense. Plaintiffs also detail that vicarious liability under state law remains a viable cause of action because the state law claims against Deputy McLin have been sufficiently pled. (Doc. 9 at 7.)

4. Leave to amend.

In the alternative, the Plaintiffs request leave to amend the *Complaint* to set forth more facts under Federal Rule of Civil Procedure 15. (Doc. 9 at 7.)

*c. Sheriff Ard's reply*

In reply, the Sheriff argues that Plaintiffs have failed to allege sufficient facts against Sheriff Ard in his official capacity because they do not allege any facts regarding a specific policy or a pattern to show an official custom. (Doc. 16 at 1.) The Sheriff likewise points out that under *Iqbal*, Plaintiffs cannot open the door to discovery with nothing more than conclusions. (Doc. 16 at 3 (citing, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)).) The Sheriff also states that Plaintiffs have waived any arguments regarding the personal capacity claims by not addressing it in their memorandum. (Doc. 16 at 2.) Further the Sheriff argues that Plaintiffs have failed to allege either that Sheriff Ard was personally involved in the constitutional deprivation or that his wrongful acts were causally connected. (Doc. 16 at 4.) The Sheriff argues that the conclusory allegations are not sufficient to overcome the immunity afforded by La. R.S.

9:2798.1. Finally, the Sheriff adopts the arguments made in Deputy McLin's *Motion to Dismiss* regarding the damages.

*d. Analysis*

1. The Livingston Parish Sheriff's Office is not an entity capable of being sued.

The Sheriff is correct that the Livingston Parish Sheriff's Office is not an entity capable of being sued. Federal Rule of Civil Procedure 17(b), dictates that the capacity to sue or be sued is determined by state law. Under Louisiana law, the Louisiana Supreme Court has explained that:

> It is well settled in the lower courts that a Sheriff's Department is not a legal entity capable of being sued. It is the elected Sheriff, not the "Parish Sheriff's Office," that is the constitutionally designated chief law enforcement officer of the Parish. The law of Louisiana affords no legal status to the "Parish Sheriff's Department" so that the department can sue or be sued, such status being reserved for the Sheriff.

*Valentine v. Bonneville Ins. Co.*, 96-1382 (La. 3/17/97), 691 So. 2d 665, 668 (internal citations removed); *see Abbott v. Town of Livingston*, No. 16-00188, 2016 WL 4134565, at *4 (M.D. La. July 29, 2016) ("It is well settled under Louisiana law that a sheriff's department or office, or the parish prison, is not a separate legal entity capable of being sued. Rather, a parish sheriff, whether in his individual or official capacity, is the proper party defendant."); *see also Cozzo v. Tangipahoa Parish Council President Government*, 279 F.3d 273, 283 (5th Cir. 2002). Therefore, to the extent the *Complaint* alleges a claim against the Livingston Parish Sheriff's Office, that claim is dismissed with prejudice.

2. The *Complaint* fails to state a claim under federal law against Sheriff Ard

   A. *Vicarious liability and respondeat superior liability under § 1983.*

In short, the Sheriff is also correct that "supervisory officials cannot be held liable under section 1983 for the actions of subordinates ... on any theory of vicarious or *respondeat superior* liability." *Jackson v. E. Baton Rouge Par. Prison*, No. 14-45, 2014 WL 3193124, at *3 (M.D.

La. July 8, 2014) (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir.2005)); *see also Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."). Thus, the Sheriff's motion is granted, and to the extent that Plaintiff intended to assert a claim of vicarious liability under § 1983 against Sheriff Ard, such a claim is dismissed with prejudice.

> B. *Adoption of a policy or custom for lethal force in animal encounters under § 1983.*

Plaintiff has alleged claims against Defendant Ard in his official capacity as sheriff of Livingston Parrish. The Supreme Court outlined in *Kentucky v. Graham:*

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165–66 (1985) (citations omitted). At the outset, it should be noted that "a federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under ... § 1983." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161, 122 L.Ed. 2d 517 (1993).

Further, this Court has previously explained:

> "A local government entity may be sued 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 166 (5th Cir.2010) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121 (1988)) (internal quotation marks omitted). To

> impose liability upon Defendant ... in his official capacity ... the Plaintiff[ ] must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Id.* (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001)) (internal quotation marks omitted).

*Norton v. Livingston Par. Detention Ctr.*, No. 13-437-JJB, 2013 WL 5519400, at *4 (M.D. La. Oct. 2, 2013) *order clarified on other grounds,* No. 13-437-JJB, 2014 WL 1057218 (M.D. La. Mar. 19, 2014).

Boiled down, in this case, Plaintiffs allege that Sheriff Ard had a policy, practice, or custom of failing to train or failing to adequately train regarding the use of lethal force and dog/animal encounters. The Sheriff argues that Plaintiffs have failed to allege facts sufficient to state a claim under the second element—that there was "an official policy." An "official policy" is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Norton*, 2013 WL 5519400 at *4 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984)).

Here, Plaintiffs' conclusory allegation that the Sheriff "had a policy, practice, or custom of failing to train or failing to adequately train its officers regarding use of lethal force and handling dog/animal encounters," (Doc. 1 at ¶ 32.), without more specific factual allegations support, "effectively amount[s] to a formulaic recitation of the elements of [the] 42 U.S.C. § 1983 cause of action." *See Norton*, 2013 WL 5519400 at *5 (citing *Twombly,* 550 U.S. at 555).

As explained by the Fifth Circuit, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; *it must contain specific facts.*" *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir.1992)).

Plaintiffs likewise allege that there was a failure to train, supervise, and equip employees and specifically Deputy McLin regarding use of lethal force and handling dog/animal encounters. The Fifth Circuit has "consistently held ... that '[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy.' " *Mathews v. Bowie Cty., Tex.*, 600 F. App'x 933, 934 (5th Cir. 2015) (unpublished) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). This is because "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy." *Fraire*, 957 F.2d at 1278 (5th Cir. 1992) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)).[1]

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011) (citation omitted). The Supreme Court advises that the heightened standard of fault and causation for these claims is intended to prevent federal courts from engaging "in an endless

---

[1] However, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which [a municipality] may be liable." *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000). Even so, the single incident exception "is a narrow one, and one that [the Fifth Circuit has] been reluctant to expand." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).This Court has previously explained the narrow single incident exception from *Brown* as thus:
> In Brown, the Fifth Circuit found the single incident exception to apply when there was an utter failure to train and supervise. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 462 (5th Cir. 2000). The Fifth Circuit later stated in *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002), that the single incident exception applied in *Brown* because the county in that case "failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness." *Cozzo*, 279 F.3d at 288 (internal quotation marks and citations omitted). The court also noted that "there is a difference between a complete failure to train as in *[Brown]* and a failure to train in one limited area."

*Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 584 (M.D. La. 2007)(emphasis omitted).

exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *City of Canton v. Harris*, 389 U.S. 378, 392, (1989) (internal citations omitted).

Accordingly, because Plaintiffs have made only conclusory factual allegations as to what the Sheriff's policy was and has made no factual allegations sufficient to show a custom, Plaintiffs' claim against Sheriff Ard in his official capacity must be dismissed.

### C. *Personal capacity claim under § 1983.*

Plaintiffs have likewise alleged that Sheriff Ard is liable in his personal capacity based on a failure to train Deputy McLin. To establish the individual liability of a supervisor under section 1983 based on a failure to train, a plaintiff must show: " '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.' " *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)). In the context of failure-to-supervise claims, the Fifth Circuit has said: " 'for a supervisor to be liable ..., the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.' " *Goodman*, 571 F.3d at 395 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). "Moreover, 'for liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.' " *Id.* (quoting *Roberts*, 397 F.3d at 293) (dismissing failure to supervise and failure to train claims together); *see also Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (to satisfy deliberate indifference element of failure-to-train claim, a plaintiff must usually demonstrate a "pattern of violations" and that inadequate training is "obvious and

obviously likely to result in a constitutional violation"); *Floyd v. City of Kenner*, 351 F. App'x 890, 898 (5th Cir. 2009) ("[T]he pleadings must have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation.") (internal citation omitted).

In finding factual allegations of a failure to train claim insufficient on a 12(b)(6) motion, this Court quoted the Fifth Circuit and stated:

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, a supervisor might reasonably be found to be deliberately indifferent....
>
> We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small,* for example, we held that to succeed on his claim of failure to train or supervise the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to demonstrate a *pattern of violations.* Similarly, in *Snyder v. Trepagnier,* we held that "proof of a single violent incident ordinarily is insufficient" for liability. Rather, the plaintiff must demonstrate at least a pattern of *similar incidents in which the citizens were injured.* Moreover, a showing of deliberate indifference requires that the Plaintiffs show that the failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional rights.
>
> Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired[.]

*Clayton v. Colombia Cas. Co.*, 2012 WL 2952531, at *7 (M.D. La. July 19, 2012)

(quoting *Estate of Davis,* 406 F.3d at 381–83). Here the Plaintiffs' conclusory allegations

regarding the Sheriff's failure to train and deliberate indifference are not sufficient to state a claim for personal liability under § 1983.² The Court will therefore dismiss the claim against the Sheriff in his official and personal capacity.

   3. The *Complaint* also fails to state a claim under Louisiana law

      A. *Negligent hiring, training, and supervising.*

The *Complaint* alleges a state law claim for negligent hiring, training, and supervising. In response, the Sheriff raises the state statutory immunity defense under La. R.S. 9:2798.1. La. R.S. 9:2798.1, which is entitled, *Policymaking or discretionary acts or omissions of public entities or their officers or employees*, states:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

Plaintiffs argue that this state law immunity is not appropriate because the actions taken were outrageous, malicious and flagrant misconduct. (Doc. 9 at 6.) La. R.S. 9:2798.1 also states,

> C. The provisions of Subsection B of this Section are not applicable:
>
>    (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
>
>    (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

The Honorable Judge Brady of this District explained how the Louisiana Court of Appeals applied La. R.S. 9:2798.1.

> In *Smith v. Lafayette Parish Sheriff's Department*, . . . the plaintiff alleged the Lafayette Parish Sheriff's Department hiring and retention policy was inadequate. *See* 874 So.2d 863 (La. App. 3 Cir. 2004). In *Smith*, a rape victim brought suit against the Lafayette Parish Sheriff's Department claiming that the Sherriff's hiring/retention policies were inadequate, after it was discovered that one of the

---

² Having determined that the *Complaint* does not state a claim for personal liability under § 1983, the Court will not address the Sheriff's arguments regarding federal qualified immunity.

16

department's detectives had raped her and multiple other individuals. *Id.* at 865. The court found that the sheriff's "hiring/retention policy was a discretionary act" and liability could not be imposed on the department or its officers for the application of that policy. *Id.* at 867.

Judge Brady further explained,

> . . . the hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function. Like in *Smith,* the plaintiffs have failed to point to a Louisiana statute mandating a particular policy or procedure for hiring, training, supervising, or screening officers; and the court's review has also failed to uncover any relevant statute mandating a policy or procedure. Accordingly, the sheriff's department's hiring, training, retention, and supervision policy are discretionary functions, for which Louisiana Revised Statutes § 9:2798.1 grants the officers and the department immunity.

*Hoffpauir v. Columbia Cas. Co.*, No. 12-403-JJB, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013).

> The Fifth Circuit has also applied La. R.S. 9:2798.1, explaining,
>
> The Supreme Court of Louisiana considers the immunity conferred on state public officials by this law to be "essentially the same as the immunity conferred on the federal government by the exception to the Federal Tort Claims Act (FTCA)." *Jackson v. State ex rel. the Dep't of Corrections,* 785 So.2d 803, 809 (La.2001). Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy. *See Fowler v. Roberts,* 556 So.2d 1, 15 (La.1990) (adopting the FTCA discretionary function test reiterated in *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988)). Under part one, if the official has no alternatives, the exception does not apply. *Williams v. City of Monroe,* 658 So.2d 820, 828 (La.Ct.App.2d Cir.1995). Under part two, the court must determine whether, if the action involves selection among alternatives, the choice was policy-based. *Id.* An officer's use of policy-based discretion protects him from state tort liability.
>
> Chief Prator had a wide variety of options for training officers under his command; no law, regulation, or policy of the State of Louisiana explicitly directed his course of action. Further, his training and supervisory decisions are grounded in policy considerations; he had to assess the community's needs, contemplate the types of situations his officers would face, and ultimately reconcile his training decisions with the department's budget. Because his actions meet both prongs of the discretionary immunity test, Chief Prator is immune from the plaintiffs' state law tort claims.

*Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).

In this case, Sheriff Ard is a policymaker and in his discretionary decision-making capacity, has to train and supervise deputies at the Livingston Parish Sheriff's Office. La. R.S. 9:2798.1 applies to those decisions. The conclusory allegations in the *Complaint* that Sheriff Ard's actions in failing to train or supervise were willful, malicious, and flagrant misconduct do not rise to a level to make the La. R.S. 9:2798.1 immunity inapplicable. As such, the *Motion* will be granted as to the claim for negligent hiring, training, and supervising.

    B. *Respondeat superior liability under state law.*

Plaintiffs have also alleged *respondeat superior* liability under state law for the actions of Deputy McLin. Under Louisiana law,

> [A]n employer is liable for its employee's torts committed if, at the time, the employee was acting within the course and scope of his employment." *Timmons v. Silman*, 761 So. 2d 507, 510 (La. 5/16/00); see La. Civ. Code art. 2320. If there is no underlying tort, there can be no basis for the imposition of vicarious liability. See *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318 (La. 11/30/94).

*Frank v. Parnell*, No. 1:18-CV-00978, 2019 WL 2438685, at *9 (W.D. La. May 14, 2019). The Sheriff argues that because the state law claims against Deputy McLin should be dismissed, the state law claim for *respondeat superior* liability should likewise be dismissed. (Doc. 5-1 at 19.) For the reasons that the Court states in the decision on Deputy McLin's *Motion to Dismiss under Rule 12(b)(6)*, (Doc. 17), the Court does not dismiss the state law claims against Deputy McLin, therefore the Court denies the *Motion* as it pertains to the state law claim for *respondeat superior* liability.

4. <u>Leave to Amend</u>

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification ... is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013). Finally, one leading treatise explained:

As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine

conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016). Here, Plaintiffs ask for leave to amend their *Complaint* in the event the Court found that there are deficiencies; therefore, the Court will act in accordance with the "wise judicial practice" and general rule and allow leave to amend.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 5) filed by Jason Ard, as Sheriff of the Parish of Livingston and the Livingston Parish Sheriff's Office is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that the *Motion* is **DENIED** as to the Plaintiffs' state law claim for *respondeat superior* liability.

**IT IS FURTHER ORDERED** that the Plaintiffs' claims against the Livingston Parish Sheriff's Office and for *respondeat superior* liability under § 1983 are **DISMISSED WITH PREJUDICE**. In all other respects, the *Motion* is **GRANTED,** and the claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs may file an amended complaint within 28 days of entry of this Ruling and Order. If Plaintiffs do not file an amended complaint within 28 days, the Court will dismiss those claims with prejudice. Defendant is instructed to contact the Court if the 28-day period passes and Plaintiffs have failed to file any amended complaint.

Signed in Baton Rouge, Louisiana, on February 11, 2020.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**