UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TONIA MARIA SKINNER, ET AL.** | **CIVIL ACTION NO.** |
| **VERSUS** | |
| | **19-66-JWD-EWD** |
| **JASON ARD, AS SHERIFF OF THE PARISH OF LIVINGSTON, ET AL.** | |

**RULING AND ORDER ON MOTION TO STAY DISCOVERY**

Sheriff Jason Ard (the "Sheriff"), and Deputy Barney McLin ("McLin"), with the Livingston Parish Sheriff's Department (collectively, "Defendants"), have filed a Motion to Stay Discovery ("Motion to Stay")[1] in this case, pending resolution of the Re-Urged Motions to Dismiss Pursuant to Rule 12(b)(6),[2] filed by Defendants, that raise the qualified immunity defense. The Motion to Stay is opposed by Tonia M. Skinner ("Skinner") and Gregory Causey ("Causey")[3] (collectively, "Plaintiffs").[4] For the reasons set forth herein, the Motion to Stay is granted.[5] All discovery in this matter will be stayed pending resolution of the qualified immunity defenses raised in the Re-Urged Motions to Dismiss.

**I. Background**

Plaintiffs allege that on February 1, 2018, McLin arrived at Plaintiffs' home in Livingston, Louisiana in order to serve Skinner with a jury summons.[6] At the time of McLin's arrival, Plaintiffs' family dog of six years, Roscoe, was in Plaintiffs' yard. According to Plaintiffs, Skinner

---

[1] R. Doc. 23.
[2] R. Doc. 21-2, pp. 18-22 (raising qualified immunity defense and immunity under La. R.S. 9:2798.1 as to the Sheriff) & R. Doc. 22-2, pp. 7-12 (raising qualified immunity defense as to McLin).
[3] Skinner and Causey are married. R. Doc. 20, ¶¶ 3-4.
[4] R. Doc. 27.
[5] A decision related to a stay is not excepted in 28 U.S.C. § 636(b)(1)(A), nor is it dispositive of the merits of any claim under Fed. R. Civ. P. 72. *See Fletcher v. Whittington*, No. 18-1153, 2019 WL 2511033, at n.2 (W.D. La. May 23, 2019).
[6] R. Doc. 20, ¶ 11.

1

advised McLin of Roscoe's presence and called Roscoe back to the home but McLin stated that he was not concerned about Roscoe and continued to approach the house. Roscoe ran toward the area where McLin was present, allegedly nipped at McLin's leg, and then retreated toward the house. Plaintiffs contend that Roscoe did not show signs of aggression and retreated to Skinner but McLin shot Roscoe several times and killed him, all while Roscoe was in close proximity to Skinner.[7]

On February 1, 2019, Plaintiffs filed their original Complaint in this Court against the Livingston Parish Sheriff's Department (the "Department"), as well as the Sheriff and McLin, in their individual and official capacities, alleging federal claims under 42 U.S.C. § 1983 and pendent state law claims. In the original Complaint, Plaintiffs contended that the unreasonable actions of McLin and the policies and practices of the Department and the Sheriff were deliberately indifferent to Plaintiffs' rights and resulted in Roscoe's unnecessary death, which constitutes a Fourth Amendment illegal seizure and a Fourteenth Amendment deprivation.[8] Plaintiffs also claimed that the Sheriff and the Department failed to properly train McLin.[9] Plaintiffs additionally asserted Louisiana state law claims for conversion against McLin,[10] and negligent hiring and supervision and *respondeat superior* claims against the Sheriff and the Department for the acts of McLin.[11]

On May 1, 2019, Defendants filed their first Motions to Dismiss, and sought a stay of discovery in light of their assertion of qualified immunity in those Motions to Dismiss.[12] The

---

[7] R. Doc. 20, ¶¶ 11-30, 44.
[8] R. Doc. 1, ¶¶ 34-41.
[9] *Id.*
[10] R. Doc. 1, ¶¶ 44-46.
[11] R. Doc. 1, ¶¶ 48-50, 53-55. In connection with these claims, Plaintiffs originally sought compensatory, emotional distress, punitive, *LeJeune,* and "loss of sense of security and trust for law enforcement" damages, veterinary expenses, and attorney's fees pursuant to 42 U.S.C. § 1988. R. Doc. 1, ¶¶ 33, 40, 42, 60-62.
[12] R. Docs. 5, 6, 8.

parties' stated in their Joint Status Report that they had conferred and agreed discovery should be stayed pending a ruling on the motions to dismiss.[13] Accordingly, the Court entered a stay of discovery pending a ruling on those dispositive motions.[14]

In early February 2020, the Court ruled on the Motions to Dismiss, and dismissed all of Plaintiffs' claims against the Department with prejudice, holding that the Department is not an entity subject to suit.[15] The Court granted in part the Sheriff's motion, dismissing with prejudice Plaintiffs' § 1983 vicarious liability claim against the Sheriff, and dismissing without prejudice Plaintiffs' § 1983 and state law negligent hiring and supervision claim, and § 1983 failure to implement policy claim, against the Sheriff in his individual and official capacities. Plaintiffs' state law *respondeat superior* claim against the Sheriff was not dismissed.[16] Likewise, the Court granted in part McLin's motion, dismissing Plaintiffs' claim for *Lejeune* damages with prejudice and dismissing Plaintiffs' § 1983 claim and demand for veterinary expenses without prejudice.[17] Plaintiffs' state law conversion claim against McLin was not dismissed.[18]

Plaintiffs were permitted to file an amended complaint to address the claims dismissed without prejudice. On March 9, 2020, Plaintiffs filed their First Amended and Supplemental Complaint ("Amended Complaint'), which re-urges many of the same claims against the Sheriff and McLin.[19] In his Re-urged Motion to Dismiss, the Sheriff seeks dismissal of all federal claims and the state law claim of negligent hiring/supervision asserted against him, contending that he is entitled to qualified immunity on the federal individual capacity claims and La. R.S. 9:2798.1

---

[13] R. Docs. 12-13.
[14] R. Doc. 13.
[15] R. Doc. 18, p. 10.
[16] R. Doc. 18, pp. 10-18.
[17] R. Doc. 17, pp. 11-17.
[18] R. Doc. 17, pp. 15-16.
[19] R. Doc. 20.

3

immunity on the state law negligent hiring claim.[20]  Likewise, McLin seeks dismissal of all federal claims asserted against him (*i.e.*, unreasonable seizure), contending that he is entitled to qualified immunity.[21]

In connection with their Re-urged Motions to Dismiss, Defendants also filed the instant Motion to Stay.[22]  Defendants assert that Plaintiffs have propounded discovery to them but, in light of the assertion of qualified immunity, all discovery should be stayed until the Court rules on their Re-urged Motions to Dismiss.[23]  In opposition to the Motion to Stay, Plaintiffs argue that all discovery should be permitted to go forward, or alternatively, discovery should be permitted as to Plaintiffs' state law claims.[24]

## II. Law and Analysis

### A. Legal Standards

"Qualified immunity shields 'government officials performing discretionary functions' from civil liability for claims under federal law 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[25] "[Q]ualified immunity constitutes an 'immunity from suit' rather than a mere defense to liability."[26]  The issue of qualified immunity should be resolved at the earliest possible stage of litigation because "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[27]

---

[20] R. Doc. 21-2, pp. 18-22.  The Sheriff's Re-urged Motion to Dismiss does not seek dismissal of the state law *respondent superior* claim. *See* R. Doc. 21, p. 1.
[21] R. Doc. 22, p. 1.  McLin's Re-urged Motion to Dismiss does not seek dismissal of the state law conversion claim. *See* R. Doc. 21, p. 1.
[22] R. Doc. 23 *and see* Reply brief at R. Doc. 33.
[23] R. Doc. 23-2, p. 2.
[24] R. Doc. 27, pp. 2-3.
[25] *Randle v. Lockwood*, 666 Fed. Appx. 333, 335 (5th Cir. 2016) (internal citations omitted).
[26] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*) (*per curiam*).
[27] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Significantly, "it is only when the district court 'is unable to rule on the immunity defense without further clarification of the facts' and when the discovery order is 'narrowly tailored to uncover only those facts needed to rule on the immunity claim,' that an order allowing limited discovery is neither avoidable nor overly broad."[28]  Although discovery on the issue of qualified immunity is possible, such discovery "must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[29]  "If the complaint alleges facts to overcome the defense of qualified immunity, the district court may then proceed under *Lion Boulos* to allow the discovery necessary to clarify those facts upon which the immunity defense turns."[30]

---

[28] *Wilson v. Sharp*, No. 17-84, 2017 WL 4685002, at *2 (M.D. La. Oct. 17, 2017) (*citing Lion Boulos v. Wilson*, 834 F.2d 504, 507-508 (5th Cir. 1987)).

[29] *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 994 (5th Cir. 1995).  *See also Baker v. Ephion*, No. 15-838, 2017 WL 3996415, at *2 (M.D. La. Sept. 11, 2017) (staying discovery in light of defendant's asserted qualified immunity defense and explaining that "discovery on the issue of qualified immunity 'must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.") (*citing Wicks*); *Lee v. Ard*, No. 17-23, 2017 WL 5349493, at *7 (M.D. La. Nov. 13, 2017) ("When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.'  The plaintiff must support his claim with 'sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'  When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity.  'The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'") (internal citations and quotations omitted).

[30] *Wicks*, 41 F.3d at 995.  *See also Backe*, 691 F.3d at 648 ("a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.  *After* the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'") (*citing Lion Boulos*, 834 F.2d at 507-508); *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) ("The district court failed to make an initial determination that the plaintiffs' allegations, if true, would defeat qualified immunity, falling short of the finding required by *Backe* and *Wicks*; and unlike the court in *Lion Boulos*, the district court did not identify any questions of fact it needed to resolve before it would be able to determine whether the defendants were entitled to qualified immunity."); *Randle*, 666 Fed. Appx. 336, n. 6 (noting that the "narrow exception to the general rule that qualified immunity should be decided as early in the litigation as possible" is only applicable where the district court first determines that "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity" and second finds that despite plaintiff's pleadings it is still unable to rule on the immunity defense without further clarification of the facts.).

Accordingly, the Fifth Circuit permits discovery only *after* a determination has been made that the plaintiff has alleged facts sufficient to state a claim against the defendant. Even discovery limited to the issue of qualified immunity is allowed only if the court is unable to rule on the qualified immunity defense without additional facts and then only such discovery as is necessary to rule on the qualified immunity defense is permitted.

### B. It Is Appropriate to Stay All Discovery Pending Resolution of the Qualified Immunity Defenses

Defendants' Motion to Stay seeks a stay of discovery as to all claims in this matter. It is unclear whether Plaintiffs oppose a stay of all discovery or whether Plaintiffs oppose a stay as to just the pendent state law claims. The majority of Plaintiffs' Opposition explicitly addresses discovery as to the state law claims. However, in their conclusion, Plaintiffs seek alternative relief, *i.e.*, a denial of the Motion to Stay *in toto* which would permit all discovery, or instead, a partial denial of the Motion, which would permit discovery as to the state law claims that survived the February 2020 Ruling (and are not the subject of the Re-Urged Motions to Dismiss).[31]

Plaintiffs' argument that all discovery should be permitted, relies on general precepts relative to the Court's inherent power to control its docket and manage proceedings before it.[32] Rather than resorting to these general precepts, however, Fifth Circuit jurisprudence is clear that when a defendant asserts the defense of qualified immunity, a stay of discovery pending resolution

---

[31] R. Doc. 27, pp. 3-4.
[32] R. Doc. 27, p. 2, *citing Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (explaining generally that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Plaintiffs also cite *Wilson,* 2017 WL 4685002, for the general precept that Fifth Circuit precedent permits discovery after a determination that the plaintiff has stated facts sufficient to state a claim. However, as Defendants correctly point out at R. Doc. 23-2, p. 4, in *Wilson*, this Court stayed discovery pending resolution of a Motion to Dismiss asserting the defense of qualified immunity based on the Fifth Circuit jurisprudence discussed herein. *See Wilson*, 2017 WL 4685002, at *2 (M.D. La. Oct. 17, 1997).

6

of the defense is appropriate.[33] The more specific directives set forth in this Circuit regarding the assertion of qualified immunity control. Further, the Supreme Court has explained that "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"[34] In light of that consideration, Plaintiffs' prejudice argument, *i.e.*, that they should not have to wait until the Re-urged Motions to Dismiss are ruled upon to conduct discovery, is unpersuasive.[35]

Plaintiffs cite *Lee v. Ard* in support of permitting limited discovery as to the state law claims and argue that they have stated claims "with sufficient precision and factual specificity to raise a genuine issued [sic] as to the illegality of Defendants' conduct on the fact of the Complaint, *as ruled by this Court*."[36] Plaintiffs then contend: "Therefore, regardless of the rulings on the reurged Motions to Dismiss the remaining claims, the claims ruled properly stated by this Court will remain against both Defendants…regardless of the outcome of the reurged motions." By these statements, Plaintiffs argue that discovery should not be stayed as to the state law claims preserved in the February 2020 Rulings and which are not the subject of Defendants' Re-urged Motions to Dismiss, *i.e.*, *respondeat superior* against the Sheriff and conversion against McLin.

The § 1983 illegal seizure and state law conversion claims legally (and factually) overlap, as both involve considerations of property deprivations, and the state law claim of *respondeat superior* arises out of the same incident giving rise to the other claims. As Defendants point out, the state law claims are intertwined with the federal claims and it will be difficult, if not impossible, for the parties to conduct discovery on the former without discovery branching into the latter.[37]

---

[33] *See Wicks,* 41 F.3d 991 at 994 and *Baker,* 2017 WL 3996415, at *2. *See also* R. Doc. 23-2, pp. 3-4, *citing Wicks* at *id.* and other applicable precedent.
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (*quoting Siegert v. Gilley*, 500 U.S. 226, 236, (1991) (KENNEDY, J., concurring in judgment)).
[35] R. Doc. 27, p. 3.
[36] R. Doc. 27, p. 3 (emphasis added) and *citing* 2017 WL 5349493.
[37] R. Doc. 33, pp. 3-7.

7

Under these facts, allowing discovery to proceed with respect to the state law claims would effectively contravene the policy which requires a stay of discovery pending the resolution of the defense of qualified immunity, *i.e.*, the "avoidance of disruptive discovery." Furthermore, piecemeal discovery requested by Plaintiffs is inefficient, and could conceivably result in duplicative depositions and written discovery. This Court has stayed discovery as to both federal and state law claims asserted against governmental defendants in other § 1983 cases where the defendants have asserted the qualified immunity defense.[38] Finally, Plaintiffs generally argue that "a stay of discovery will merely delay the discovery process, and in turn the entire case and the Court's docket."[39] Such a concern is present in any case where a stay of any discovery is imposed pending resolution of the qualified immunity defense.[40] After weighing the competing interests of the parties, the Court exercises its inherent discretion to stay discovery as to the surviving state law claims as well.

### III. Conclusion

Defendants have raised a qualified immunity defense in their Re-Urged Motions to Dismiss. A stay is mandated as to the federal claims to which qualified immunity applies. Because the pendent state law claims are factually intertwined with the federal claims, the purpose of staying discovery when the qualified immunity defense is raised, as well as judicial economy, support a stay of discovery as to the state law claims as well. Accordingly,

---

[38] *See e.g., Imani,* 2018 WL 2208221, **1, 5 (staying discovery in light of qualified immunity defense as to § 1983 claims, as well as pending state law tort claims). *See also Patterson v. City of McComb, Mississippi,* No. 18-74, 2018 WL 4471778, at *1 (S.D. Miss. Sept. 18, 2018). While in *Patterson*, the local rules of the district court automatically provided for a stay of all discovery in response to motions asserting qualified immunity, the *Patterson* court nevertheless found that lifting the stay and allowing discovery to go forward on just the state law claims was inappropriate because the plaintiff's "Section 1983 claims and his state law claims are predicated on the same facts.").
[39] R. Doc. 27, p. 3.
[40] *See Imani,* 2018 WL 2208221 at *4.

**IT IS ORDERED** that the Motion to Stay Discovery filed by Defendants, Sheriff Jason Ard and Deputy Barney McLin,[41] is **GRANTED**.  All discovery in this matter is **STAYED** pending resolution of the qualified immunity defenses raised in the Re-urged Motions to Dismiss.[42]

Signed in Baton Rouge, Louisiana, on May 7, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] R. Doc. 23.
[42] R. Docs. 21-22.