## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TONIA MARIE SKINNER, ET AL.**

**CIVIL ACTION**

**VERSUS**

**NO. 19-66-JWD-EWD**

**JASON ARD, SHERIFF OF LIVINGTSON PARISH, ET AL.**

### RULING AND ORDER

This matter comes before the Court on the *Re-Urged Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 21) filed by Defendant Jason Ard, Sheriff of Livingston Parish, State of Louisiana ("Sheriff Ard").[1]  Plaintiffs Tonia Marie Skinner ("Ms. Skinner") and Gregory W. Causey ("Mr. Causey") (collectively, "Plaintiffs") oppose the motion. (Doc. 28.)  Sheriff Ard filed a reply. (Doc. 29.)  Oral argument is not necessary.  The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.  For the following reasons, Sheriff Ard's motion is granted, and Plaintiffs' claims against him are dismissed with prejudice.

### I.    Relevant Factual and Procedural Background

#### A.  Relevant Factual Background

##### *1. Introduction*

The factual allegations in the operative complaint were laid out in detail in the Court's *Ruling and Order* (Doc. 35) on Deputy McLin's re-urged motion to dismiss (Doc. 22).  Those factual allegations are incorporated by reference into this ruling.

---

[1] The other defendant in this case is Deputy Barney McLin.  Deputy McLin filed a separate *Re-Urged Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 22), which the Court denied in a different ruling. (Doc. 35.)

In sum, Deputy McLin arrived on Plaintiffs' property to serve a jury summons. Plaintiffs' dog Roscoe was loose. Ms. Skinner warned Deputy McLin that Roscoe was loose. The deputy said he wasn't worried and proceeded anyway. The dog was not barking or aggressive.

Roscoe ran toward the officer, circled him, and "nipped" the back of the deputy's leg. The bite was so mild that it didn't tear the deputy's pants leg and caused only a scratch to his calf. After the "nip," Roscoe ran back toward Ms. Skinner.

Deputy McLin responded by drawing his fire arm and shooting Roscoe twice in the side. The dog was seriously wounded. He could not stand, walk, run, or jump. Roscoe cried in pain and crawled toward his owner. The officer fired two more shots at the dog and missed, all while the dog was near Ms. Skinner. Finally, Deputy McLin took steps toward the pet, aimed at his head, and fired a final shot which killed Roscoe.

### 2. Allegations Relevant to Sheriff Ard

Plaintiffs allege that Sheriff Ard "failed to train and equip [Deputy McLin] with respect to properly handling dog/animal encounters without the use of lethal force." (*First Amend. Compl.* ¶ 41, Doc. 20.) This claim is "[b]ased upon . . . previous incidents of [Deputy McLin] firing his weapon and killing a dog without actual danger to persons[.]" (*Id.*) Specifically, Plaintiffs allege, "[u]pon information and belief," that the deputy "has previously been involved in situations wherein he discharged his gun, killing a dog, while no person was in danger of severe physical harm." (*First Amend. Compl.* ¶ 40, Doc. 20.)

Plaintiffs further assert:

> Upon information and belief, Sheriff JASON ARD, with deliberate indifference, gross negligence, and reckless disregard to the rights of Plaintiffs - and all persons similarly situated - maintained, enforced, tolerated, permitted, and applied policies, practices, or customs and usages of (including but not limited to) subjecting citizens to unreasonable seizures by failing to adequately train,

2

> supervise, and equip employees to properly handle dog/animal encounters without the use of lethal force as evidenced by the two incidents involving DEPUTY McLIN that we know of at this time
>
> [ ] DEPUTY McLIN acted unreasonably under the circumstances by resorting to lethal force without a reasonable apprehension of any threat of severe bodily injury to any person. DEPUTY McLIN's unreasonable actions are wholly or partially a result of the Defendant Sheriff JASON ARD's failure to train and/or equip DEPUTY McLIN to properly handle dog/animal encounters without the use of lethal force.

(*Id.* ¶¶ 50–51.)  Plaintiffs allege that "Upon information and belief, Defendant, Sheriff JASON ARD had a policy, practice, or custom of failing to train or failing to adequately train his deputies regarding use of lethal force and handling dog/animal encounters." (*Id.* ¶ 52.)  Lastly, Plaintiffs assert in their § 1983 claim:

> Upon information and belief, Sheriff JASON ARD, with deliberate indifference, gross negligence, and reckless disregard to the rights of Plaintiffs, and all persons similarly situated, maintained, enforced, tolerated, permitted, and applied policies, practices, or customs and usages of (including but not limited to), subjecting people to unreasonable seizures of their property and failure to adequately train, supervise, and equip employees to properly handle dog/animal encounters.

(*Id.* ¶ 62.)

### *3. Relief Sought*

Plaintiffs seek, *inter alia*, compensatory and punitive damages. (*Id.* ¶¶ 81–82.)  Plaintiffs claim that they experienced property damage, veterinary expenses, and mental anguish from Roscoe's death and from being "within feet of the trajectory of [Deputy McLin's] fired weapons." (*Id.* ¶¶ 43, 53.)

Plaintiffs bring the following claims for relief: (1) illegal seizure under the Fourth Amendment against Deputy McLin and Sheriff Ard (*id.* ¶¶ 54–63); (2) state law conversion claim

against Deputy McLin (*id.* ¶¶ 64–67); (3) state law *respondeat superior* claim against Sheriff Ard for Deputy McLin's actions (*id.*¶¶ 68–72); and (4) state law claims against Sheriff Ard for negligent hiring, training, and supervising (*id.* ¶¶ 73–77).

### B. Procedural History

Plaintiffs filed their original complaint on February 1, 2019. (Doc. 1.)  On May 1, 2019, Deputy McLin and Sheriff Ard filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Docs. 5, 6.)

On February 11, 2020, this Court issued an order granting in part and denying in part Sheriff Ard's motion. (*Ruling and Order*, Doc. 18.)[2]  Specifically, the Court (1) denied the motion as to Plaintiffs' state law claim for *respondeat superior*; (2) dismissed with prejudice Plaintiffs' *respondeat superior* claim under § 1983; and (3) dismissed without prejudice Plaintiffs' other claims against Sheriff Ard. (*Id.* at 20.)  With respect to the § 1983 official capacity claim, the Court found:

> Here, Plaintiffs' conclusory allegation that the Sheriff "had a policy, practice, or custom of failing to train or failing to adequately train its officers regarding use of lethal force and handling dog/animal encounters," (Doc. 1 at ¶ 32.), without more specific factual allegations support, "effectively amount[s] to a formulaic recitation of the elements of [the] 42 U.S.C. § 1983 cause of action." *See [Norton v. Livingston Parish Det. Ctr.*, No. 13-437, 2013 WL 5519400, at \*5 (M.D. La. Oct. 2, 2013)] (citing *Twombly*, 550 U.S. at 555). . . .
>
> Plaintiffs likewise allege that there was a failure to train, supervise, and equip employees and specifically Deputy McLin regarding use of lethal force and handling dog/animal encounters. . . .

---

[2] On February 10, 2020, this Court issued an order granting in part and denying in part Deputy McLin's motion. (*Ruling and Order*, Doc. 17 at 19.)  Specifically, the Court (1) dismissed Plaintiffs' claim under § 1983 and for medical and veterinary expenses without prejudice; (2) dismissed Plaintiffs' claim for *Lejune* damages with prejudice; and (3) denied the motion in all other respects. (*Id.*)

> [B]ecause Plaintiffs have made only conclusory factual allegations as to what the Sheriff's policy was and ha[ve] made no factual allegations sufficient to show a custom, Plaintiffs' claim against Sheriff Ard in his official capacity must be dismissed.

(*Id.* at 12–14.)  As to Plaintiffs' individual capacity claims against Sheriff Ard, the Court found that Plaintiffs also failed to state a claim.  The Court stated, "[h]ere the Plaintiffs' conclusory allegations regarding the Sheriff's failure to train and deliberate indifference are not sufficient to state a claim for personal liability under § 1983." (*Id.* at 15–16.)   Finally, the Court dismissed the state law claims for negligent hiring, training and supervision based on the state statutory immunity defense in La. R.S. 9:2798.1:

> In this case, Sheriff Ard is a policymaker and in his discretionary decision-making capacity, has to train and supervise deputies at the Livingston Parish Sheriff's Office. La. R.S. 9:2798.1 applies to those decisions. The conclusory allegations in the Complaint that Sheriff Ard's actions in failing to train or supervise were willful, malicious, and flagrant misconduct do not rise to a level to make the La. R.S. 9:2798.1 immunity inapplicable.

 (*Id.* at 16–18.) The Court gave Plaintiffs leave to amend to cure those claims dismissed without prejudice. (*Id.* at 20.)

On March 9, 2020, Plaintiffs filed their *First Amended Complaint*. (Doc. 20.) On March 20, 2020, Sheriff Ard filed the instant re-urged motion to dismiss under Rule 12(b)(6). (Doc. 21.)[3]

## II.    Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

---

[3] Again, Deputy McLin filed a separate re-urged motion to dismiss. (Doc. 22.)  On January XX, 2021, the Court issued a *Ruling and Order* denying Deputy McLin's motion. (Doc. 35.)

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia*, *S.A. De* C.V., No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

### III.    Discussion of § 1983 Claims

#### A.    Official Capacity Claims

##### *1. Parties' Arguments*

###### *a.*  Sheriff Ard's Original Memorandum (Doc. 21-2)

Sheriff Ard first argues that, if the Court dismisses all federal claims against Deputy McLin, then it must dismiss all federal claims against Sheriff Ard. Because Sheriff Ard maintains that Plaintiffs fail to state a viable claim against Deputy McLin, Sheriff Ard believes the claim against him should be dismissed as well.

Sheriff Ard next asserts that Plaintiffs fail to state an independent cause of action against him under federal law.  Again, the *First Amended Complaint* is conclusory and keeps the same general allegations against Sheriff Ard.  He specifically argues:

> Here, Plaintiffs' Amended and Supplemental Complaint makes only the conclusory allegations that Sheriff Ard, with deliberate indifference, gross negligence, and reckless disregard, maintained, enforced, tolerated, permitted, and applied policies, practices, or customs and usages of subjecting citizens to unreasonable seizures by failing to adequately train, supervise, and equip employee to handle dog/animal encounters, and that Sheriff Ard had a policy of custom of failing to train his deputies regarding animal and dog encounters

(Doc. 21-2 at 10.)

Additionally, the allegation that there were other incidents involving Deputy McLin are "woefully inadequate to support their allegations that Sheriff Ard improperly trained or supervised

his deputies, or how Sheriff Ard 'maintained, enforced, tolerated, permitted, and applied' policies or customs of subjecting citizens to unreasonable seizures." (*Id.* at 11.)  Moreover, no details are provided about these prior incidents.  In any event, Plaintiffs fail to satisfy the definition of a "policy" under Fifth Circuit law, as there are insufficient allegations of a persistent, widespread practice of city officials.

Even if Plaintiffs had alleged a policy, they have failed to show deliberate indifference. Plaintiffs fail to allege facts showing that Sheriff Ard knew of such a policy or custom with "animal encounters." (*Id.* at 13.)

Sheriff Ard asserts that Plaintiffs have done little to cure the deficiencies of their prior complaint.  Their allegations remain a formulaic recitation of the elements of the offense which is insufficient under *Iqbal/Twombly*.  Sheriff Ard again relies on *Norton*, which dismissed an official capacity claim as conclusory, and Sheriff Ard argues that this case is an even stronger case for dismissal that *Norton*.

### b.  Plaintiffs' Opposition (Doc. 28)

Plaintiffs assert that Sheriff Ard is the policy maker and that, as sheriff, he is responsible for ensuring that his deputies act within the confines of state and federal law.  This includes the prohibition on unlawful seizures under the Fourth Amendment.  The killing of a companion animal can constitute such a seizure.  Since Deputy McLin is a civil process server, it should be expected that he has encounters with animals, so he should be trained in non-lethal approaches to animal encounters.  Deputy McLin's prior incidents of killing animals shows that he is not sufficiently trained.  Further, "Sheriff Ard made the decisions to hire, suspend, and reinstate Deputy McLin after the first dog killing." (Doc. 28 at 7.)  Deputy McLin's conduct shows that Sheriff Ard acted wrongfully to reinstate the deputy without proper training, and there is a pattern of violations.

       *c.*  <u>Sheriff Ard's Reply (Doc. 29)</u>

Sheriff Ard begins by emphasizing that the only allegations that matter are those contained in the operative complaint, not those made in Plaintiffs' opposition. The allegations in the operative complaint are conclusory, and the bare allegations of a prior incident are insufficient. Further, Plaintiffs fail to demonstrate that these two prior incidents constitute a policy. Lastly, Plaintiffs do not establish how Sheriff Ard acted with deliberate indifference to Plaintiffs' constitutional rights.

### *2. Applicable Law*

       *a.*  <u>Official Capacity Claims Generally</u>

"An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Romain v. Governor's Office of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations omitted). At the outset, it should be noted that "a federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under . . . § 1983." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161, 122 L. Ed. 2d 517 (1993)

"Section 1983 offers no *respondeat superior* liability." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). "Municipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . .'" *Id.* (quoting *Monell v. Dep't of Soc. Servs.*

*of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). That is, "[a] municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.' " *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.' " *Id.* (quoting *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). The Plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541–42 (quoting *Piotrowski*, 237 F.3d at 578).

### b. Official Policy

"A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g,* 739 F.2d 993 (5th Cir. 1984). "Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined."

*Id.*

With respect to practices and customs: "A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.' "

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.' " *Id.* (quoting *Webster,* 735 F.2d at 842). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.' " *Id.* at 850–51 (quoting *Piotrowski,* 237 F.3d at 582 (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' " *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)).

"A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.' " *Id.* (quoting *McConney v. City of Hous.,* 863 F.2d 1180, 1184 (5th Cir.1989)). Thus, in *Pineda*, the Fifth Circuit held that eleven instances of warrantless entry did not support a pattern of unconstitutional warrantless entry. *Pineda*, 291 F.3d at 329. In *Peterson*, the Fifth Circuit found that 27 complaints of excessive force between 2002 and 2005 were insufficient to constitute a pattern, as almost all of the incidents involved small crimes with minor injuries, and the police force was large. *Peterson*, 588 F.3d at 851.

### c.  Moving Force of Constitutional Violation

"The third prong requires a plaintiff to prove 'moving force' causation." *Valle*, 613 F.3d at 542. "To succeed, 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.' " *Id.* (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997)). "That is, 'the plaintiff must demonstrate that a municipal

decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.' " *Id.* (quoting *Brown*, 520 U.S. at 411, 117 S. Ct. 1382). "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.' " *Id.* (quoting *Piotrowski*, 237 F.3d at 579).

Additionally, "Plaintiffs must meet a heightened standard of causation in order to hold a municipality liable under § 1983." *Id.* at 546 (citing *City of Canton*, 489 U.S. at 391–92, 109 S.Ct. 1197). Plaintiffs must show that the municipal policy was the " 'moving force' that caused the specific constitutional violation." *Id.* (citing *Bryan County*, 219 F.3d at 461). "In other words, the plaintiff must establish a 'direct causal link' between the municipal policy and the constitutional injury." *Id.* (citing *Brown*, 520 U.S. at 404, 117 S. Ct. 1382).

### d.  Failure-To Claims and Deliberate Indifference

To state a claim for a claim against a municipality for failure to train, "a plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544 (citation omitted). "All failure to act claims, such as . . . failure to train [or] supervise . . . involve the same basic elements: inadequacy, deliberate indifference, and causation." *Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 833 n. 5 (W.D. Tex. 2006) (citations omitted).

"The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Valle*, 613 F.3d at 544 (quoting *Bryan County*, 219 F.3d at 457). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* (quoting *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197). Additionally, "for

liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

"[D]eliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). Plaintiffs "must show that 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.' " *Valle*, 613 F.3d at 547 (quoting *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197). In *Connick*, the Supreme Court summarized this standard as follows:

> Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities[.] . . . *see also Pembaur, supra,* at 483, 106 S. Ct. 1292 (opinion of Brennan, J.) (" [M]unicipal liability under § 1983 attaches where— and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately

> chosen a training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 61–62, 131 S. Ct. at 1360 (citations and quotations mostly omitted).[4]

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011) (citation omitted). The Supreme Court advises that the heightened standard of fault and causation for these claims is intended to prevent federal courts from engaging "in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *City of Canton*, 389 U.S. at 392, 109 S. Ct. at 1206 (internal citations omitted).

*e.* Need for an Underlying Constitutional Violation

"The Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.' " *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986)). Thus, official capacity "claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648–49 (5th Cir. 2013) (citing *Bustos*, 599 F.3d at 467 ("Because [plaintiff] has alleged no constitutional injury attributable to the Officers, [plaintiff] has failed to state a claim that a City policy was the moving force behind a violation of his constitutional rights.")).

---

[4] A showing "of deliberate indifference is difficult, although not impossible, to base on a single incident." *Valle*, 613 F.3d at 549 (citation omitted). "The 'single incident exception' is extremely narrow; a plaintiff must prove that the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.* (emphasis by *Valle*, citations and quotations omitted).

### 3. Analysis

Primarily, the Court notes that Plaintiffs stated a viable claim against Deputy McLin. (*Ruling and Order*, Doc. 35.)  Thus, the Court will not grant the motion to dismiss for lack of an underlying constitutional violation.

Putting that aside, Plaintiffs' official capacity claim fails on virtually every level.  First, even assuming Plaintiffs had identified a policy of "failing to adequately train, supervise, and equip employees to properly handle dog/animal encounters without the use of lethal force" (*First Amend. Compl.* ¶ 50, Doc. 20) (which is questionable), Plaintiffs fail to allege sufficiently numerous, similar prior incidents to satisfy the requirement of a custom.  Again, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' " *Peterson*, 588 F.3d at 851.  Here, Plaintiff alleges that, on prior occasions, Deputy McLin "discharged his gun, killing a dog, while no person was in danger of severe physical harm." (*First Amend. Compl.* ¶ 40, Doc. 20.)   But no other details are given to show that the instant incident is similar to the past ones.  And, even if this allegation was sufficiently similar, Plaintiffs certainly fail to allege a sufficient number of prior incidents. *See Pineda*, 291 F.3d at 329 (finding 11 instances of warrantless entry insufficient); *Peterson*, 588 F.3d at 851 (finding 27 complaints of excessive force in three years insufficient).

Second, to state a failure-to claim, Plaintiffs must specifically allege how the training, supervision, and hiring is defective. *See Goodman*, 571 F.3d at 395. Here, Plaintiffs allege that Sheriff Ard "maintained, enforced, tolerated, permitted, and applied policies, practices, or customs and usages of (including but not limited to) subjecting citizens to unreasonable seizures by failing to adequately train, supervise, and equip employees to properly handle dog/animal encounters without the use of lethal force as evidenced." (*First Amend. Compl.* ¶ 50, Doc. 20.)  However,

15

Plaintiffs do not allege *how* Sheriff Ard did any of this or how the training program was otherwise defective.  Without more, Plaintiffs' allegations of inadequate training, supervising, and hiring are insufficient.

Third, even if Plaintiffs had sufficiently alleged a custom and the inadequacy of the training, supervising, and hiring, Plaintiffs failed to adequately allege deliberate indifference.  Again, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 61–62, 131 S. Ct. at 1360 (citations and quotations mostly omitted).  Here, Plaintiffs do not allege a pattern.  They allege only an unknown number of incidents with the same deputy. (*First Amend. Compl.* ¶ 40–41, Doc. 20.)  Further, other allegations of deliberate indifference (*id.* ¶¶ 62) are wholly conclusory.  As a result, Plaintiffs fail to allege that Sheriff Ard "disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61, 131 S. Ct. at 1360.

In sum, Plaintiffs have failed to state a viable official capacity claim against Sheriff Ard. Consequently, this claim will be dismissed.

### B.  Individual Capacity Claims

#### 1. Parties' Arguments

Sheriff Ard next asserts that Plaintiffs must allege that he was personally involved in the deprivation or that his actions were casually connected to same, but Plaintiffs have failed to do so. Plaintiffs have not alleged that Sheriff Ard was personally involved with or even present at the scene of the constitutional violation, so they have failed to state a viable individual capacity claim. Plaintiffs have only pled conclusory allegations of policies, but, for the same reasons given above, these are insufficient.  Plaintiffs have also failed to allege deliberate indifference, as there is no pattern of similar violations.  In any event, Sheriff Ard is entitled to qualified immunity.

Plaintiffs make no additional arguments about Sheriff Ard's liability other than what was summarized above.

Sheriff Art responds by arguing that Plaintiffs failed to address his arguments, so they have waived these claims. Even if they hadn't, Plaintiffs still failed to plead viable individual capacity claims. Plaintiffs' claims are wholly conclusory, and Plaintiffs provide no detail about how any training program was deficient

### 2. Applicable Law

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

" 'A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). " 'In

17

order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.' " *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*)).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). " 'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). " 'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' " *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). Nevertheless, "[l]iability for failure to promulgate policy . . . require[s] that the defendant . . . acted

18

with deliberate indifference." *Id.*   As the Fifth Circuit stated with respect to "failure-to-train" claims:

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program.  A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.  Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability.

*Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).

As to the other prong of the Court's analysis, " '[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. ——, ——, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (per curiam ) (alterations and internal quotation marks omitted)). " 'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.' " *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *White*, 580 U.S. at ——, 137 S. Ct. at 551 (internal quotation marks omitted)). " 'In other words, immunity protects all but the plainly incompetent or

those who knowingly violate the law.' " *Id.* (quoting *White*, 580 U.S. at ——, 137 S. Ct. at 551 (internal quotation marks omitted)).

" 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Id.* at 1153 (quoting *White*, 580 U.S., at ——, 137 S. Ct., at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. ——, ——, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)).

### 3. Analysis

Having carefully considering the matter, the Court finds that Plaintiffs have failed to state viable individual capacity claims against Sheriff Ard.  In short, Plaintiffs allege no constitutional violation by Sheriff Ard.

First, Plaintiffs fail to allege that Sheriff Ard personally participated in Deputy McLin's constitutional violation.  *See Porter*, 659 F.3d at 446.  As Sheriff Ard notes, he is not even alleged to have been at the scene of Roscoe's shooting.

Second, for the reasons articulated above, Plaintiffs fail to allege that Sheriff Ard implemented unconstitutional policies.  *See id.*   Again, the allegations in the *First Amended Complaint* ¶¶ 50–52, 62, Doc. 20, are wholly conclusory.  Even if they were not, the other alleged incidents with Deputy McLin (*id.* ¶¶ 40–41)  are insufficient in number and similarity to constitute a custom. *See Pineda*, 291 F.3d at 329; *Peterson*, 588 F.3d at 851

Third, Plaintiffs fail to adequately allege deliberate indifference.  Plaintiffs point to an unknown number of other incidents without any detail, and this hardly constitutes a pattern.  Moreover, Plaintiffs fail to sufficiently allege that Sheriff Ard was aware of a substantial risk of

harm and actually drew the inference.  Plaintiffs allege only "[u]pon information and belief," that the deputy "has previously been involved in situations wherein he discharged his gun, killing a dog, while no person was in danger of severe physical harm." (*First Amend. Compl.* ¶ 40, Doc. 20.)  They do not allege beyond conclusions that Sheriff Ard was aware of these prior incidents.

For all these reasons, the motion is granted in this respect.  The individual capacity claims against Sheriff Ard will be dismissed.

## IV.    Discussion of  State Law Claims

### A.  Parties' Arguments

Sheriff Ard next argues that, aside from Plaintiffs' *respondeat superior* claim against him (which Sheriff Ard does not seek dismissal of (Doc. 21-2 at 4)), Plaintiffs fail to state viable state law claims against him.  First, Plaintiffs give only conclusory allegations that Sheriff Ard provided inadequate supervision and training and instituted inadequate policies.  Thus, for the same reasons the federal claims were dismissed, the state law claims should be dismissed.  Second, Sheriff Ard is entitled to immunity under La. R.S. 9:2798.1.  Sheriff Ard relies on *Hoffpauir v. Columbia Casualty Co.*, No. 12-403, 2013 WL 5934699 (M.D. La. Nov. 5, 2013),  for the proposition that hiring, training, and supervision are discretionary functions within the ambit of this statute. Further, Plaintiffs fail to demonstrate that either exception to this immunity statue applies.

Plaintiffs add little to their above arguments to address the state law claims.  They mainly assert that Sheriff Ard's conduct satisfies the criminal or fraudulent misconduct exception to La. R.S. 9:2798.1.

In reply, Sheriff Ard argues that Plaintiffs' contention of criminal misconduct is conclusory.  No facts or details are provided about Deputy McLin's prior incident or about how Sheriff Ard's conduct is criminal, fraudulent, malicious, etc.

**B. Applicable Law**

La. R.S. 9:2798.1, entitled "Policymaking or discretionary acts or omissions of public

entities or their officers or employees," states:

> B. Liability shall not be imposed on public entities or their officers
> or employees based upon the exercise or performance or the failure
> to exercise or perform their policymaking or discretionary acts when
> such acts are within the course and scope of their lawful powers and
> duties

La. R.S. 9:2798.1 also states:

> C. The provisions of Subsection B of this Section are not applicable:
>
> (1) To acts or omissions which are not reasonably related to the
> legitimate governmental objective for which the policymaking or
> discretionary power exists; or
>
> (2) To acts or omissions which constitute criminal, fraudulent,
> malicious, intentional, willful, outrageous, reckless, or flagrant
> misconduct.

In *Hoffpauir*, a different division of this Court explained how Louisiana appellate courts

have applied La. R.S. 9:2798.1:

> In *Smith v. Lafayette Parish Sheriff's Department,* . . . the plaintiff
> alleged the Lafayette Parish Sheriff's Department hiring and
> retention policy was inadequate. *See* 874 So.2d 863 (La. App. 3 Cir.
> 2004). In *Smith*, a rape victim brought suit against the Lafayette
> Parish Sheriff's Department claiming that the Sherriff's
> hiring/retention policies were inadequate, after it was discovered
> that one of the department's detectives had raped her and multiple
> other individuals. *Id.* at 865. The court found that the sheriff's
> "hiring/retention policy was a discretionary act" and liability could
> not be imposed on the department or its officers for the application
> of that policy. *Id.* at 867.

*Hoffpauir*, 2013 WL 5934699, at *12. That division also stated:

> . . . the hiring, training, and supervision policy of the Livingston
> Parish Sheriff's Department is a discretionary function. Like
> in *Smith,* the plaintiffs have failed to point to a Louisiana statute
> mandating a particular policy or procedure for hiring, training,

22

> supervising, or screening officers; and the court's review has also failed to uncover any relevant statute mandating a policy or procedure. Accordingly, the sheriff's department's hiring, training, retention, and supervision policy are discretionary functions, for which Louisiana Revised Statutes § 9:2798.1 grants the officers and the department immunity.

*Id.*

The Fifth Circuit has also applied La. R.S. 9:2798.1, explaining,

> The Supreme Court of Louisiana considers the immunity conferred on state public officials by this law to be "essentially the same as the immunity conferred on the federal government by the exception to the Federal Tort Claims Act (FTCA)." *Jackson v. State ex rel. the Dep't of Corrections,* 785 So.2d 803, 809 (La. 2001). Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy. *See Fowler v. Roberts,* 556 So.2d 1, 15 (La. 1990) (adopting the FTCA discretionary function test reiterated in *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S. Ct. 1954, 1958–59, 100 L. Ed. 2d 531 (1988)). Under part one, if the official has no alternatives, the exception does not apply. *Williams v. City of Monroe,* 658 So.2d 820, 828 (La.Ct.App.2d Cir.1995). Under part two, the court must determine whether, if the action involves selection among alternatives, the choice was policy-based. *Id.* An officer's use of policy-based discretion protects him from state tort liability.
>
> Chief Prator had a wide variety of options for training officers under his command; no law, regulation, or policy of the State of Louisiana explicitly directed his course of action. Further, his training and supervisory decisions are grounded in policy considerations; he had to assess the community's needs, contemplate the types of situations his officers would face, and ultimately reconcile his training decisions with the department's budget. Because his actions meet both prongs of the discretionary immunity test, Chief Prator is immune from the plaintiffs' state law tort claims.

*Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).

### C.  Analysis

Having carefully considered the matter, the Court will grant the motion, for the same reasons given in the Court's prior ruling.  As in *Hoffpauir* and *Roberts*, Sheriff Ard's duties to train, supervise, and hire are not prescribed by law or regulation, and these duties are grounded in policy considerations.

Further, Plaintiffs fail to demonstrate that an exception to La. R.S. 9:2798.1 applies. Plaintiffs' argument that Sheriff Ard engaged in "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" are wholly conclusory and unsupported by the operative complaint. (*See First. Amend. Compl.* ¶¶ 50–52, 62, Doc. 20.)  As Sheriff Ard argues, no *facts* are alleged about Deputy McLin's prior incidents with dogs (beyond the somewhat conclusory allegation that "no person was in danger of severe physical harm" (*id.* ¶ 40), and no details are given as to how or why Sheriff Ard retained Deputy McLin after these incidents. Further, no details are given about how Sheriff Ard was deficient in his training, supervision, or hiring.  Even if Sheriff Ard was negligent, the Court cannot say that this conduct was intentional, malicious, reckless, or anything else that would fall within La. R.S. 9:2798.1(C)(2).  Without more, Plaintiffs have failed to demonstrate that Sheriff Ard is not entitled to immunity under La. R.S. 9:2798.1 for their claims of negligent hiring, training, and supervising.

### V.  Leave to Amend

Plaintiffs seek leave to amend their complaint if they failed to state viable claims.  Federal Rules of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir. 2005) (internal citations and quotations omitted). However, "[l]eave to amend is in no way automatic, but the district court must possess a 'substantial reason'

to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Jones*, 427 F.3d at 994. (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal*." Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." (citation and internal quotation marks omitted).

*Id.*, 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Having carefully considered the matter, the Court will deny Plaintiffs' request for leave to amend. First, as stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay. *Id.* at 378 (citation omitted). Here, Plaintiffs had the benefit of the Court's ruling on Sheriff Ard's original motion to dismiss, yet they failed to cure the deficiencies of their original complaint. Second, even putting this aside, further amendment would be futile; Plaintiffs' claims against Sheriff Ard remain conclusory and unsubstantiated. As a result, Plaintiffs' request for amendment will be denied. *See Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp.

3d 663, 679 (M.D. La. 2019) (deGravelles, J.) (denying leave to amend when plaintiff should have had notice of issue following court's ruling on original motion to dismiss, and when further amendment would be futile).

## VI.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Re-Urged Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 21) filed by Defendant Jason Ard, Sheriff of Livingston Parish, State of Louisiana is **GRANTED**, and all claims by Plaintiffs against Sheriff Ard—other than Plaintiffs' state law *respondeat superior* claim for Deputy McLin's actions —are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>February 3, 2021</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**